TOWN OF MONTCLAIR, VILLAGE OF SOUTH ORANGE, TOWN OF BLOOMFIELD, BOROUGH OF VERONA, TOWNSHIP OF CEDAR GROVE, AND BOROUGH OF NORTH CALDWELL, MUNICIPAL CORPORATIONS OF THE STATE OF NEW JERSEY, PROSECUTORS, v. STATE. BOARD OF TAX APPEALS AND BOROUGH OF ROSE-LAND, A MUNICIPAL CORPORATION, RESPONDENTS.

Argued May 6, 1941—Decided November 12, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and HEHER.

For the prosecutors, *Herbert J. Hannoch* and *Morris Weinstein.*

For the respondents, *Edward R. McGlynn, Alfred J. Grosso* and *Joseph Weintraub.*

The opinion of the court was delivered by

CASE, J. The writ brings up a judgment of the State Board of Tax Appeals setting aside a determination of the Essex County Board of Taxation and directing that board to deduct the sum of $2,248,325.94 from the total of the

revised ratables of the Borough of Roseland in determining the amount of money to be raised for state, state school and county purposes for the year 1941. The litigation grows out of the Voorhees Act and supplemental legislation, *Pamph. L.* 1900, *ch.* 195; *Pamph. L.* 1917, *ch.* 17; *Pamph. L.* 1919, *ch.* 25; *R. S.* 54:31-1, *et seq.; R. S.* 54:32-1, *et seq.* The State Tax Commissioner revised the 1936 and 1937 valuations placed by the Roseland assessor on property of Public Service Electric and Gas Company to be used in the distribution of the gross receipts franchise tax and reduced them in the aggregate sum above mentioned. The money raised from the borough during those years for state, state school and county purposes had been determined on total ratables that included the original utility property assessments. The State Board held that the borough was entitled, under *R. S.* 54:4-49, to be credited, on its 1941 ratables so far as concerned the amount to be raised in 1941 for the above named purposes, with the reductions imposed by the Commissioner, September 20th, 1937, on the 1936 and 1937 valuations. The judgment entered thereon is under review.

Formerly the property of a utility was assessed in the same manner and with the same effect as the property of any other owner. The Voorhees Act left the property of the affected utilities in the local ratables for certain civic purposes but exempted the utilities from a property tax (as to certain items of property) and substituted a tax on the gross receipts of the utilities and caused the fund thus accumulated to be distributed among the municipalities wherein the property was situated in the proportion which the assessed utility ratables in a given municipality bore to the total of the assessed ratables of the utility throughout the state. The statutory machinery by which the assessments became the factor of distribution was that the several assessors assessed the value of the utility property in their respective districts (*R. S.* 54:31-2) and filed returns thereof in the office of their county board of taxation (*R. S.* 54:32-4); and that board transmitted copies of the returns filed by the assessors to the commissioner, who had power to inquire into, equalize and revise all of the valuations so returned (*R. S.* 54:31-5) and

was under the duty to ascertain and apportion the fund upon the basis of his revision among the various taxing districts and to certify the apportionment to the respective collectors of taxes in the several municipalities entitled thereto.

The assessor of the Borough of Roseland assessed the property of Public Service Electric and Gas Company in that borough at $3,396,600 for the year 1934, at the same amount for the year 1935; at $4,521,600 for the year 1936 and at the same amount for the year 1937. After the Commissioner had revised and corrected the 1934 valuations certified to him by the several county boards, the City of Hoboken appealed to the State Board of Tax Appeals from the Commissioner's revised valuation of the utility property in that municipality and brought in, as parties, the numerous municipalities which, as prospective distributees of the fund, were interested. In disposing of that litigation the State Board decided, February 5th, 1935, that the Commissioner's valuations for 1934 should be set aside and that the Commissioner should make an apportionment of the gross receipts on the basis of the valuations certified by the respective assessors to the respective county tax boards. When the valuations for 1935 were certified the Commissioner again made his own valuations (his valuation for Roseland was $2,088,084.27 as against the assessor's $3,396,600), differing in divers instances from those certified by the assessors, and again the City of Hoboken appealed to the State Board. That board decided and adjudged, on October 26th, 1936, that the apportionment made by the Commissioner should be set aside and that in those municipalities, of which the Borough of Roseland was one, whose assessors had certified as the 1935 valuations figures identical with those for 1934, or practically so, he should adopt the assessor's valuations; with other directions for other instances. Accordingly Roseland's 1934 valuation of the utility's property was fixed at $3,396,600 and its 1935 valuation at the same figure. In each of those years the borough assessor, as we have seen, had placed the valuation at that amount. The Commissioner withheld his certification as to the 1936 and the 1937 valuations until September 20th, 1937; on that day—the day on which he certified the

adjudicated 1935 valuations—he certified the Roseland valuations for 1936 at $3,397,827.78, and for 1937 at $3,397,046.28. There was no appeal. The appropriate shares of the gross receipts taxes were paid to the borough on that basis.

Although the utility was exempted from the payment of a property tax nevertheless, by the then provisions of the statute, the assessment made by the assessor on its property remained a part of the ratables of the borough for the apportionment of the borough's share of state, state school and county taxes. *R. S.* 54:4-49 provides:

> "Except as to any state tax at a fixed rate provided for in sections 54:4-50 and 54:4-51 (conceded not to apply hereto) of this title, each county board of taxation in apportioning the amount of money to be raised in the various taxing districts for state, state school or county purposes, after having received the tax lists and duplicates of the local assessors and having revised, corrected and equalized the assessed value of all the property in the respective taxing districts, shall deduct from the total valuations of each taxing district as so revised, corrected and equalized an amount equal to the ratables of the preceding year or years of such district represented by the reduction or all reductions made in the assessments of such districts subsequent to the apportionment of the preceding year or years in consequence of any appeal or appeals to the county board of taxation or to the state board of tax appeals, or by reason of the decision of any court, and the total valuations as ascertained after the assessments in the various assessment lists and duplicates have been revised, corrected and equalized, and after the deductions herein provided for shall have been made, shall form the basis for the apportionment of state, state school or county taxes. When an assessment has been reduced on appeal and the decision on that appeal has been further appealed, no deduction as herein provided for shall be made with respect to the appealed assessment until the further appeal has been finally determined."

Under the supposed authority of that statutory provision the borough, on January 21st, 1938, filed with the Essex County Board of Taxation a petition making application for a reduction from the borough's total valuations of ratables for succeeding years in an amount equal to the aggregate of the reductions made by the Commissioner in the utility assessments for the years 1936 and 1937. The application was denied on May 3d, 1938, and no appeal was taken. A year and a half after that denial, namely, on November 22d, 1939, the borough filed a second petition with the Essex County Board of Taxation praying for the same reduction. The county board considered that its authority had ended because of the long delay between the Commissioner's action and the filing of the petition and dismissed the petition. The borough then addressed a petition to the state board in which it recited the two applications to the county board and the dispositions thereof and prayed that the "determination" of the county board be "set aside" and that that board be ordered to make the deductions. The state board accepted the petition as an appeal (*R. S.* 54:2-35), considered that the appeal was well taken and filed the judgment now under review.

The state board took the view that the subject-matter was ripe for an appeal, that there was no limitation upon the period within which the borough might seek the relief, that the reductions made by the Commissioner in the 1936 and 1937 valuations were in consequence of an appeal to the state board and therefore within the statutory classification (*R. S.* 54:4-49, *supra*) of revisions and corrections in assessed valuations, and that the county board was bound to take notice of the reductions and was further bound to grant the application for credit on ratables against subsequent state and county impositions as and when application to that end should be presented by the municipality. It was further of the opinion that the language of the statute (*R. S.* 54:4-49, *supra*) "Each county board of taxation * * * shall deduct * * * *" imposed an affirmative and mandatory duty upon the county board which the latter was bound to respect; and this view is emphasized by the respondents

herein with the added argument that the duty upon the county board was a purely administrative one and involved no judicial action.

We find it unnecessary to determine the nature of the duty that rested upon the county board, viz., whether it was purely administrative or involved a judicial aspect; but concededly the right of the borough to a credit hinged in part upon the condition that the reduction in ratables had been "in consequence of * * * appeal or appeals to the State Board of Tax Appeals * * *." The 1934 valuation of the utility property in Roseland finally certified by the Commissioner was in consequence of the Hoboken appeal to the State Tax Board and was at the figure placed by the assessor; so, the 1935 valuation; but they were not reductions. The state board had sustained the valuations made by the assessor as assessments made according to law. In 1936 the borough assessor raised the assessment well over a million dollars, namely, as stated above, from $3,397,827 to $4,521,600, and in 1937 duplicated his 1936 assessment, and the Commissioner assumed the responsibility, following investigation and study, of reducing those assessments. Were the reductions in these valuations effected "in consequence of any appeal * * * to the State Board of Tax Appeals * * *?" It is quite likely that the Commissioner was deterred from making as great a reduction as otherwise he would have made, that is, from using his own valuations of $2,088,843.75 for 1936 and $2,088,359.53 for 1937, because he was convinced by the board's repeated decisions that those figures would be set aside; but can it be said that the *reduction* effected by the Commissioner from the assessor's figures for 1936 and 1937 to those which the assessor had theretofore fixed was in consequence of the board's decision? Was the act of *reducing*, in *any* amount, a consequential act arising out of the decision in the statutory sense? There is room for doubt whether the affirmative of that question has been established, and it seems necessary that it should have been established before the county board was under the pertinent duty imposed by *R. S.* 54:4-49; this on the assumption that that duty extends to a revision downward by the Commissioner under the franchise tax legislation.

We find no statutory scheme by which knowledge that the Commissioner had reduced valuations may *per se* be imputed to the county boards. The statute calls for no return certification by him to them. Therefore we think that the statute imposed upon the Essex County Tax Board no duty to give credit for reductions until the fact of the reductions had been officially brought to its notice. The Borough of Roseland did, as we have said, on January 21st, 1938, lay before the county board a petition containing the information concerning the Commissioner's reductions and alleging and praying a credit accordingly. But on May 3d, 1938, the borough was notified that the county board had denied that application. The borough was thus put on notice, in this matter that involved a large number of municipalities, including prosecutors, that its prayer had been denied, and it was then, we think, under the duty, if it was to dispute the legality of the decision by the county board, to proceed with that dispute within the time permitted by the rules or the practice controlling such procedure and, if the procedure was not controlled by rules or practice, within a reasonable period. On November 22d, 1939, it presented its second petition which was dismissed on March 25th, 1940. The petition to the State Board of Tax Appeals thereon was filed on April 2d, 1940; hearing was had on April 17th, 1940; and the state board filed its judgment and its opinion on October 22d, 1940—eight months from the determination of the county board to the judgment of the state board or less than one-half of the borough's inactive period between the dismissal of its first petition and the presentation of its second.

It is fairly to be deduced that the legislature expected an aggrieved municipality to pursue its redress promptly. The statutory language is (italics inserted) : "Each county board * * * shall deduct * * * an amount equal to the ratables of *the preceding year or years* * * * represented by the reduction * * *." The context is somewhat obscure, but we read a clear purpose that the remedy shall be in close sequence to the event. A suitor municipality which would obtain the statutory relief should be diligent in seeking it. The granting of the proposed credits to the Borough of Rose-

land would create a burden upon the remaining municipalities, and that burden would now be distributed in entirely different amounts and proportions than would have been the case in 1938. It is the policy of the state that the settlement of tax controversies be effected within a reasonable time so that the assets of the dependent interlocking political divisions of city, county and state, with their financial requirements, shall be finally and harmoniously adjusted. *Acquackanonk Water Co.* v. *Passaic County Board of Taxation,* 88 *N. J. L.* 555. On the need for prompt action by a municipality, where other government units are concerned, in seeking relief from faulty valuation in the ratables, compare *Kenilworth* v. *Board of Equalization of Taxes,* 78 *Id.* 439. It is true that the decision just cited was rendered before chapter 57, *Pamph. L.* 1910, source of present *R. S.* 54:4-49, was enacted; but the reasoning for prompt action, reflected in the statute, still holds. In *Township of Delaware* v. *Assessors of Taxes,* 53 *N. J. L.* 319, it was said: "There may be such acquiescence and delay in moving to reduce an overestimate, that a waiver of objections will be presumed in favor of the public policy and necessity for a prompt and certain collection of taxes for public purposes. How long may the officers and inhabitants of a township wait before they make complaint and seek a remedy for an unreasonable and informal apportionment of assessment for taxes, conceding that they have just cause for objection?" The statutory authority for appeals to the state board is in *R. S.* 54:2-35: "Any action or determination of a county board of taxation may be appealed for review to the state board of tax appeals under such rules and regulations as it may from time to time prescribe * * *." Rule IV of the State Board of Appeals provides:

"(a) Appeals filed pursuant to Revised Statutes, Secs. 54:2-39 and 54:2-35, shall recite the action of the County Board of Taxation concerning the matter complained of and shall be filed on or before the 15th day of December of the year of the assessment sought to be reviewed * * *.

"(b) Petitions filed under Revised Statutes, Sec.

54:2-37, for the review of county equalization tables, shall be filed within sixty days from the date of confirmation of such tables by the County Board of Taxation. * ∗ *"

These, the only rules of the state board brought to our attention, do not seem to apply. But they carry, where they do apply, the requirement for prompt action, which is inherent in all tax matters. The absence of appropriate rule by the board does not free an aggrieved person, whether individual or corporate, from the need for diligence.

We conclude: (1) The county board was under no duty to act until the reduction in ratables was brought officially to its notice. (2) The borough was under a duty to proceed with diligence, as well to acquaint the county board with the facts in their statutory significance as to pursue its further remedy for relief when that board refused to act. (3) The borough must be held, because of its long delayed action, to have waived such remedy as it may have had under *R. S.* 54:4-49.

The judgment under review will be set aside; with costs to the prosecutors.