LARIO, J.T.C.
This action represents consolidated appeals; one by B.P.U.M. Development and Urban Renewal Corporation (BPUM) against the City of Camden (Camden) and another by Camden against the Camden County Board of Taxation (board) from a single judgment issued by it affirming an improvement assessment of $294,750 on the improved property owned by BPUM located in Camden.
In both appeals plaintiffs claim that, although for the tax year 1985 Camden originally assessed both the land and improvements of the subject property, the improvement assessment should have been removed by the board because the building was entitled to an exemption from real property taxation under either the Urban Renewal Corporation and Association Law of 1961, N.J.S.A. 40:550-40 et seq. (urban renewal law) or under an act to provide for exemption and abatements on commercial and industrial structures in areas in need of rehabilitation, L. 1977, c. 12, codified at N.J.S.A. 54:4-3.95 et seq. (tax abatement law, § 3.95).
The property in question, designated as Block 3, Lot 22 on the tax map of Camden, consists of approximately 17 acres of land improved with a 40,000-square foot industrial building. Camden’s tax assessor concluded that the building was substantially completed on or before April 1, 1982 at which time he calculated its assessed value to be $294,750. He then placed against the property an added improvement assessment of $221,063, which reflected 9/12ths of his total assessment valuation for the period from April 1 to December 31, 1982. For the tax year 1983 the land assessment was continued at $163,200 plus a full 12-month improvement assessment of $294,750. This total assessment, as allocated, was carried over for the tax years 1984 and 1985. No appeal by BPUM was filed with the board from either the 1982 added assessment or from the 1983, 1984 and 1985 regular assessments.
On August 15, 1985 Camden’s assessor in the name of the city filed with the board a petition of appeal from its 1985 *494 assessment upon the subject property requesting that its 1985 improvement assessment of $294,750 be reduced to zero leaving only the land assessment of $163,200.
Based upon its finding that no agreement authorizing Camden to grant a tax abatement had been executed and that the application for such an exemption had not been timely submitted as required by statute, the board concluded that the improvement was not entitled to an exemption and it entered judgment dated November 6, 1985 affirming the 1985 assessment. Both Camden and BPUM filed separate complaints with this court appealing the board’s judgment.
The initial issue to be decided is the Attorney General’s contention that the board had no jurisdiction to entertain the assessor’s petition of appeal because, admittedly, the petition was filed by the assessor and not Camden and no resolution authorizing the appeal was adopted by Camden; hence, the board’s subsequent judgment is a nullity thereby depriving the Tax Court of jurisdiction. This issue was considered comprehensively in Clinton Tp. Citizen’s Comm. v. Clinton Tp., 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982). Although, as appropriately noted in the Clinton Tp. decision, the municipality is the correct party in interest to initiate tax appeals and a proper resolution by Camden’s governing body authorizing the assessor to appeal the subject property’s assessment to the board was necessary, by reason of Camden’s participation in the appeal to this court through its city attorney and mayor and the importance of the issues raised, this court deems that these issues should be determined on the merits.[1]
As testified by Harvey C. Johnson, president of BPUM, beginning in the late 1970’s and continuing into the early 1980’s *495 discussions were held and decisions were reached between representatives of BPUM and Camden whereby BPUM was to develop a light industrial park, to be known as Poet’s Row Industrial Park, on a parcel of approximately 20 acres of land located in the vicinity of Second and Erie Streets, Camden. Upon its completion, it was proposed to consist of five buildings planned to be leased to long-term lessees. The discussions related to the funding of the project through federal, state and local grants and to abatement from local real estate taxation upon the improvements.
In conjunction therewith in March 1977 Camden adopted general ordinances allowing the tax phase-in and tax abatements permitted by tax abatement law, § 3.95 and the urban renewal law. Shortly thereafter, funding applications were filed by BPUM with various public authorities for the purchase of the land and construction of the improvements. A community development block grant from Camden for the sum of either $647,000 (as testified by Johnson) or $652,000 (as set forth in BPUM’s brief) was received together with a federal economic development administration grant in the amount of $1,888,000.
In June 1977 BPUM entered into an agreement with the Housing Authority of the City of Camden to purchase from it for the sum of $120,000 the majority of the land for the proposed industrial park. This agreement, which was subsequently amended several times, called for completion of construction of the improvements within 18 months of the date of the deed. The remainder of the land, consisting of several lots located nearby on Segal Street were purchased from Camden by way of tax sale and individuals. The inital conveyance from the housing authority to BPUM was made on March 7, 1980.
A building permit for construction of the subject improvement was issued February 29, 1981 and construction began shortly thereafter. On January 5, 1982 and February 26, 1982, respectively, the construction manager submitted to two separate subcontractor’s completion “punch lists” of specific items needing correction. On July 21, 1982 he advised BPUM, in *496 writing, that the building’s projected completion date was August 20, 1982. On December 1, 1982, when Camden’s principal economic planner forwarded to the assessor of Camden BPUM’s application for a tax abatement for the subject building, the planner advised in his forwarding letter that the building was certified as complete on December 30, 1981.
On March 1, 1982 the construction manager advised in writing that he had visited the job site during the week of February 21 for the purpose of updating the contractor’s “punch lists” issued in January 1982, and that the only items remaining to be completed from the “punch list” were the replacement of four sections of sidewalk along the front of the building and one 20-foot section of concrete curb, the total value of which did not exceed $2,500.
Prior to April 1,1982, although a certificate of occupancy had not been issued by Camden’s building inspector, the assessor concluded that the building had been substantially completed and he placed an added assessment on the building as of April 1, 1982.
Subsequently, BPUM leased the property to RCA Corporation who entered into occupancy on July 1, 1983. As of the date of this hearing, although the premises still had not received an occupancy permit, the lessee continued its occupancy.
Johnson testified that in August 1982 he had discussions with an employee of Camden who advised him that the tax abatement programs under the urban renewal law and under tax abatement law, § 3.95 could be used together. On November 24, 1982 Johnson forwarded to the senior principal economic planner BPUM’s application for tax abatement under tax abatement law, § 3.95. On the same date by separate letter he forwarded BPUM’s application under the urban renewal law to the assistant city attorney. In both covering letters Johnson requested tax abatement for three years under the tax abatement law, § 3.95 “and thereafter to have the project governed by the Urban Renewal Law.” The economic planner forwarded the tax abatement law, § 3.95 application to Camden’s assessor *497 on December 1, 1982. There was no evidence presented of what action, if any, was taken by the city attorney’s office relative to the urban renewal law application forwarded to it.
Johnson further testified that the forms for the application, although requested, were not available from Camden prior to November 1982; that he was advised by representatives of Camden that a signed agreement between BPUM and Camden was not a prerequisite; and, that he relied upon the city even though he had examined the statute as to its requirements and the form and contents of the application.
The financial agreement required under the Urban Renewal Law was not executed between the city and BPUM until March 14, 1985. The financial agreement required to be entered into pursuant to the tax abatement law, § 3.95 was not executed until February 6, 1987 which was subsequent to the entry of the board’s judgment, filing of appeals to this court and entry of the pretrial order herein.
Melvin Primas, Mayor of Camden, testified that he was BPUM’s vice-president from 1971 through 1981. He also was a member of Camden City Council from 1973 and its president from 1978 until 1981 when he was elected mayor, which office he still retains. He stated that as BPUM’s vice-president he was in charge of venture development and part of his responsibility was to put together the development of Poet’s Row Industrial Park. He stated that tax abatement was necessary for the project to succeed and that on March 19, 1977 he introduced in city council the general ordinance providing for tax abatements on commercial and industrial structures which was eventually adopted. He stated that this ordinance did not grant a tax abatement specifically to BPUM; that he abstained from voting on matters dealing specifically with BPUM; and, that he severed his ties with BPUM in 1981.

The Urban Renewal Law.

Generally all real property is required to be taxed by general laws and uniform rules and assessed at the same standard of *498 value. N.J. Const. (1947), Art. VIII, § 1, ¶ 1 & 2. However, under Art. VIII, § 3, ¶ 1, the development or redevelopment of blighted areas is declared to be for public purposes; therefore, private corporations may be authorized by law to develop or redevelop improvements made for these purposes and the improvements may be exempted from taxation for a limited period of time during which the profit shall be limited by law and the conditions of use, ownership, management and control of such improvements shall be regulated by law. Pursuant to this latter constitutional provision the Legislature enacted the urban renewal law to permit qualified associations to construct projects for designated purposes in areas declared blighted and to set certain standards. Pursuant to the urban renewal law, upon meeting certain statutory criteria designated in the act, property acquired by an urban renewal corporation may qualify for tax abatement. The “urban renewal corporation” as defined under N.J.S.A. 40:550-44 is a corporation qualified to construct, operate and maintain a “project” which is defined under N.J.S.A. 40:55046 as:
"Project” means the undertaking and execution of the redevelopment of a blighted area, in whole or in part, in accordance with an agreement with respect to the land and improvements concerned between the corporation or association and a municipality, or agency, or authority, and in connection with a redevelopment plan adopted pursuant to the procedures specified in section 17(b) of P.L. 1949, c. 306 (C. 40:55C-17(b)), including the work to be done in reference thereto, the designation of the particular proposed buildings to be constructed and their uses and purposes, the landscaping of the premises, the streets and access roads, recreational facilities, if any, the furnishing of the public utilities, the financial arrangements and the terms and conditions of the proposed municipal corporation and approval, and also means a “State investment project.” [Emphasis supplied]
As a prerequisite to the undertaking of such a project, the municipality must have first determined by ordinance that the area in which the project is to be constructed is “blighted.” In addition, the governing body of the municipality, by ordinance, must approve a redevelopment plan after study and recommendation of its planning board based on designated standards. N.J.S.A. 40:55C-17. By the adoption of N.J.S.A. 40:550-58 the Legislature has directed that every urban renewal corporation, before proceeding with any authorized project, “shall make *499 written application to the municipality for approval thereof.” The application is to be in such form and shall certify to such facts as the municipality requires and it may include but shall not be limited to the following information:
(a) A general statement of the nature of the proposed project, that the undertaking conforms to all applicable municipal ordinances, that its completion will meet an existing need, and that the project accords with the master plan or official map, if any, of the municipality.
(b) A description of the proposed project outlining the area included and a description of each unit thereof if the project is to be undertaken in units and setting out such architectural and site plans as may be required.
(c) A statement of the estimated cost of the proposed project in such detail as may be required, including the estimated cost of each unit if it is to be so undertaken.
(d) The source, method and amount of money to be subscribed through the investment of private capital, setting forth the amount of stock or other securities to be issued therefor or in the case of an association the extent of capital invested and the proprietary or ownership interest obtained in consideration therefor.
(e) A fiscal plan for the project outlining a schedule of annual gross revenue, the estimated expenditures for operation and maintenance, payments for interest, amortization of debt and reserves, and payments to the municipality to be made pursuant to a financial agreement to be entered into with said municipality.
Such application shall be addressed and submitted, to the mayor of the municipality, who shall, within 60 days after receipt thereof, submit it with his recommendations to the governing body. The governing body shall by resolution approve or disapprove the application, but in the event of disapproval, changes may be suggested to secure its approval. An application may be revised and resubmitted.
This provision clearly directs, not only must the application for the tax exemption be submitted prior to the commencement of the project, but also that there must be overt approval of the application by resolution adopted by the governing body.
The act further requires that “[ejvery approved project shall be evidenced by a financial agreement between the municipality and the corporation or association. Such agreement shall be prepared by the corporation or association and submitted as a separate part of its application for project approval,” N.J.S.A. 40:55C-59, and the act sets forth certain provisions to be included in the agreement. By this section the applicant is specifically directed to prepare and submit the financial agreement as “part of its application for project approval.” Ibid.
*500 Improvements that are made pursuant to and in compliance with the provisions of this act are exempted from real property taxation as granted by N.J.S.A. 40:550-65 which further provides that:
Any such exemption shall be claimed and allowed in the same or similar manner as in the case of other real property exemptions and no such claim, shall be allowed unless the municipality wherein said property is situated shall certify that a financial agreement with an urban renewal corporation or association for'the development or the redevelopment of the property has been entered into and is in effect as required by the provisions of this act. In the event that an exemption status changes during a tax year, the procedure for the apportionment of the taxes for said year shall be the same as in the case of other changes in tax exemption status during the tax year. [Emphasis supplied]
It further sets forth the annual service charge to be paid by the entity. Therefore, the legislative scheme set forth throughout this act clearly directs that all phases of the approval mechanism, including the filing of the application and the submission, formal acceptance and execution of the financial agreement, should be completed prior to the commencement of the project and the allowance of the exemption.

The Tax Abatement Law, § 3.95.

Our Constitution was amended at the general election of November 4, 1975 by the adoption of Art. VIII, § 1, ¶ 6 which declares that:
The Legislature may enact general laws under which municipalities may adopt ordinances granting exemptions or abatements from taxation on buildings and structures in areas declared in need of rehabilitation in accordance with statutory criteria, within such municipalities and to the land comprising the premises upon which such buildings or structures are erected and which is necessary for the fair enjoyment thereof. Such exemptions shall be for limited periods of time specified by law, but not in excess of 5 years.
By authority of this 1975 constitutional amendment the Legislature adopted tax abatement law, § 3.95. This legislation provides that exemptions and abatements from local real property taxation will be accorded to constructed or renovated commercial and industrial structures located in areas designated as an “area in need of rehabilitation.” It requires that before the act may be implemented:
*501 A qualified municipality, by passage of a general ordinance, may indicate its intention to utilize the tax abatement and exemption provisions authorized by Article VIII, Section I, paragraph 6 of the State Constitution for improvements and projects, as such are defined in section 2 above, [Section 54:4-3.96] in areas in need of rehabilitation. Such ordinance shall provide for the exemption from real property taxation of improvements for a period of 5 years, and shall set forth procedures for entering into agreements for the abatement of real property taxes for projects, in accordance with the provisions of this act. [N.J.S.A. 54:4-3.97; emphasis supplied]
N.J.S.A. 54:4-3.98, entitled “Terms and conditions of grant in ordinance; valuation of property; limitations; applications; procedure” sets forth the prerequisites for the granting of this permitted tax abatement whereby it directs:
a. In providing for tax exemptions for improvements in areas in need of rehabilitation, the ordinance may (1) grant exemptions for all such improvements, to be approved by the assessor upon proper application; or (2) define categories of improvements which shall be approved by the assessor upon proper application, and other categories of improvements which may only be exempted after review, evaluation and approval by the governing body of each individual application; or (3) authorize exemption for improvements on an individual basis after review, evaluation and approval of each application by the governing body. For applications requiring review and approval by the governing body the municipality may in its ordinance require the applicant to submit such information as it deems appropriate, but in no event shall the ordinance require the submission of information more detailed than that required for a tax abatement pursuant to section 6 of this act.
c. No exemption authorized pursuant to the provisions of this section shall be granted or allowed except upon written application therefor filed with and approved by the assessor of the taxing district wherein the improvement is made. Every such application shall be on a form prescribed by the Director of the Division of Local Government Services and provided for the use of claimants by the governing body of the municipality constituting the taxing district, and shall be filed with the assessor not later than 60 days, including Saturdays and Sundays, following the completion of the improvement. Every properly completed application for exemption of one or more improvements which is filed within the time specified shall be approved and allowed by the assessor, or reviewed and decided by the governing body, as required by ordinance, not later than within 60 days of its filing. [Emphasis supplied]
N.J.S.A. 54:4-3.100 further directs that applicants for tax abatement under this act: “shall provide the governing body with an application” setting forth various pertinent information, specifically detailed therein in subparagraphs (a) through (i), including a description of the number of classes and type of *502 employees to be employed at the project within two years of its completion; a statement of real property taxes currently assessed; estimated taxes to be paid annually during tax abatement; and, estimated taxes during the first full year following termination of tax abatement. It is obvious that the Legislature deemed this required information should be received and evaluated in advance by the municipality so that it could intelligently determine whether a tax abatement agreement should be authorized.
After an application has been received and considered, and there has been adopted an ordinance authorizing an agreement for tax abatement for that particular project, the governing body may enter into a written agreement with the applicant for the abatement of local property taxes. N.J.S.A. 54:4-3.101. However, the agreement “shall provide for the applicant to pay to the municipality in lieu of full property tax payments an amount annually to be computed by one, but in no case a combination, of” three specifically detailed alternative formulas designated as: (a) cost basis; (b) gross revenue basis; and, (c) tax phase in. N.J.S.A. 54:4-3.101(a), (b) and (c).
N.J.S.A. 54:4-3.102 continues by providing that a tax abatement agreement “entered into by municipalities pursuant to the terms of this law shall be in effect for a period of not more than five years starting with the date of the completion of the project.” And it is further directed that a copy of the fully executed property tax abatement agreement is to be submitted by the municipality to the Director of the Division of Local Government Services and to the Commissioner of the Department of Labor and Industry within 30 days following such execution. N.J.S.A. 54:3.106.
Thus, as can be seen, whether an application is filed under the urban renewal law or under tax abatement law, § 3.95, it is clear from the legislative schemes under both acts it was the Legislature’s intention to not only require passage of the preliminary ordinances but also the filing of applications and the acceptance and execution of appropriate agreements as *503 a precondition for an eligible project to receive tax abatement. The burden is on the taxpayer to clearly bring itself within a tax exemption provision. Board of National Missions v. Neeld, 9 N.J. 349, 353, 88 A.2d 500 (1952), and exemptions are to be construed narrowly. Fedders Financial Corp. v. Taxation Div. Director, 96 N.J. 376, 386, 476 A.2d 741 (1984); Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 398, 371 A.2d 22 (1977).
Structures erected after October 1 of the pretax year and completed between January 1 and October 1 following are to be added to the assessment list and assessed pro rata as of the first of the month following completion. N.J.S.A. 54:4-63.3. “Completion” as used in this act is defined to mean “substantially ready for the use for which it was intended.” N.J.S.A. 54:4-63.1. Construction for the subject property began in early 1981. There is no question that the building was substantially completed prior to April 1,1982. The fact that the building had not received a certificate of occupancy as of April 1, 1982 is not determinative of the building’s having been substantially completed. Beranto Towers v. Passaic City, 1 N.J.Tax 344 (Tax Ct.1980). Also, the fact that BPUM failed to appeal the added assessment placed by Camden as of April 1, 1982 is evidentiary of the fact that BPUM acknowledged that the building had been substantially completed as of that date. From all of the evidence presented I specifically find that the improvement in question had been substantially completed at least as of April 1, 1982.
 As previously noted, the added assessment for the tax year 1982 and the regular assessments for the tax years 1983 and 1984 were never timely appealed. These appeals are from the judgment of the board affirming a tax assessment for the full tax year 1985. The assessing date for the tax year 1985 was October 1, 1984. Property is assessed on October 1 of the preceding year, N.J.S.A. 54:4-23, with the status fixed as of the assessing date. Shelton College v. Ringwood, 48 N.J.Super. 10, 11, 136 A.2d 660 (App.Div.1957). Exemptions are deter *504 mined on October 1, unless the Legislature otherwise provides. See East Orange v. Palmer, 47 N.J. 307, 320-321, 220 A.2d 679 (1966); Ironbound Educ. & Cult. Ctr., Inc. v. Newark, 8 N.J.Tax 540 (Tax Ct.1986). Generally property is assessable or exempt with reference only to its ownership and use on October 1 preceding the calendar tax year. Jersey City v. Montville Tp., 84 N.J.L. 43, 44-45, 85 A. 838 (Sup.Ct. 1913), aff'd 85 N.J.L. 372, 91 A. 1069 (E. & A.1913); Jabert Operating Corp. v. Newark, 16 N.J.Super. 505, 508-509, 85 A.2d 216 (App.Div. 1951); East Orange v. Palmer, 47 N.J. 307, 320, 220 A.2d 679 (1966).
Therefore, the issue in these consolidated appeals is narrowed to whether BPUM’s subject improvement qualified for tax-exempt status as of October 1, 1984 under either of the two tax abatement statutes in issue. The law is well settled in New Jersey that in tax matters strict adherence to statutory requirements is mandated because they involve the exigencies of taxation and the administration of government. Tax exemptions are not favored and exemption statutes are strictly construed against those claiming exemption. The claimants have the burden of proof to establish qualification. Bloomfield v. Academy of Med. of N.J., 47 N.J. 358, 221 A.2d 15 (1966); Princeton Univ. Press v. Princeton, 35 N.J. 209, 172 A.2d 420 (1961).
The fundamental approach of our statutes is that ordinarily all property shall bear its just and equal share of the public burden of taxation. As the existence of government is a necessity, taxes are demanded and received in order for government to function. 51 Am.Jur.Taxation, § 9, p. 42. Statutes granting exemption from taxation represent a departure and consequently they are most strongly construed against those claiming exemption. [Citations omitted] The burden of proving tax-exempt status is upon the claimant. [Id. at 214, 172 A.2d 420; citations omitted]
It is clear that plaintiff did not comply with the critical requirements of the urban renewal law requiring submission of an application and the execution of a financial agreement prior to commencement of construction of the improvements.
It is equally clear that plaintiff also failed to comply with the prerequisite terms, conditions and procedure set forth *505 in N.J.S.A. 54:4-3.98 for the granting of tax abatement under § 3.95. BPUM’s application was not filed with the assessor within 60 days following completion of the improvements. Additionally, as of the critical assessing date, the exemption had not been approved and allowed by the assessor; nor had the application been reviewed, evaluated and approved by Camden’s governing body.
There is no question that as of October 1, 1984 there was not in effect a written agreement entered into between BPUM and Camden as required under either the urban renewal law or the tax abatement law, § 3.95; nor as of that date were there in existence any validating resolutions adopted by Camden. I find as a fact that all critical requirements of either the urban renewal law or the tax abatement law, § 3.95 for the granting of tax exemption and tax abatement as respectively set forth therein had not been complied with as of October 1,1984 for the 1985 tax year, therefore, the board’s action, denying Camden’s appeal for tax abatement for the 1985 tax year, was correct.
Next to be addressed is BPUM’s request for equitable relief. In seeking a reversal of the board’s judgment these appeals essentially constitute a demand for tax exemption, and to grant such relief requires relaxation of the prerequisites contained in the two acts in issue. Since tax exemption statutes must be strictly complied with, Princeton Univ. Press, supra, and because of our long-standing policy of strict enforcement of statutory time limitations in tax matters, this court may not overcome nor relax the requirements and the time limitations of either the urban renewal law or the tax abatement law, § 3.95. In F.M.C. Stores Co. v. Morris Plains Boro., 100 N.J. 418, 495 A.2d 1313 (1985), our Supreme Court held:
The Appellate Division in these cases [F.M.C. Stores Co. v. Morris Plains Boro., 195 N.J.Super 373, 479 A.2d 435 (App.Div.1984) ] held that the August 15 statutory deadline was a nonmodifiable jurisdictional requirement; it rejected the rationale that the doctrine of relaxable court rules was applicable or could overcome statutory deadline requirements. [Note omitted] 195 N.J.Super. at 381 [479 A.2d 435]. Because the right to appeal is prescribed by statute, *506 taxing districts are required to comply with the time prescriptions for filing of tax appeals, as with all other statutory requirements. Id. We agree.
Strict adherence to statutory time limitations is essential in tax matters, born of the exigencies of taxation and the administration of local government. See, e.g., Princeton Univ. Press v. Princeton Borough, 35 N.J. 209, 214, [172 A.2d 420] (1961); N.Y., Susquehanna and W.R.R. v. Vermeulen, 44 N.J. 491 [210 A.2d 214] (1965). This view has long been recognized in New Jersey courts and it has a solid policy basis. Suburban Dep’t Stores v. East Orange, 47 N.J.Super. 472, 482 [136 A.2d 280] (App.Div.1957); Montclair v. State Bd. of Tax Appeals, 127 N.J.L. 382, 389 [22 A.2d 525] (Sup.Ct.1941). This policy has been specifically acknowledged and aptly explained by the Tax Court.
The policy of applying strict time limitations to tax matters is based upon the very nature of our administrative tax structure. Municipal budgets must be finalized no later than the 90th day after the beginning of the budget year. N.J.S.A. 54:4-42. Real estate assessments, which constitute the bulk of a municipality’s income are established as of October 1 of the pretax year. N.J.S.A. 54:4-23. Throughout our tax legislation, it is clear that our legislature has attempted to set out a well organized time-table for the purpose of enabling a municipality to ascertain the amount of taxable ratables within the jurisdiction in order that it might adopt a responsible and fairly accurate budget. Galloway Tp. v. Petkevis, 2 N.J.Tax 85 (Tax Ct.1980) [Id. at 423-425, 495 A.2d 1313; footnotes omitted]
Additionally, I find that BPUM’s claim of equitable considerations is without merit. Mr. Johnson, president of BPUM, is a competent attorney of the State of New Jersey, a general partner of a local prestigious law firm and he exhibited a high degree of intelligence. He definitely is capable of understanding the two acts involved which he admitted he had read. Mayor Primas is also an intelligent and knowledgeable person who has been a member of city council since 1971 and its mayor since 1983; he is familiar with and comprehends statutory and municipal law; and he certainly understands the necessity to comply with statutory requirements generally and tax statutes especially.
It is obvious that, by reason of the close relationship existing between the principals of the two plaintiffs, they placed undue reliance thereon and did not heed nor comply with the strict requirements of the two acts in issue. Even after the added assessment was placed on the improvements in 1982, which certainly should have alerted BPUM to the fact that it had not been granted tax abatement, neither BPUM nor Camden made an attempt to rectify their failure to comply with the prerequi *507 sites of the statutes. They ignored the binding statutory tax effect of the 1982 added assessment and they continued to disregard the regular 1983 and 1984 assessments and the tax liens thereby created. Instead, both plaintiffs attempted to circumvent our tax-appeal statutes by negotiating unauthorized in lieu tax payments as though the assessor had lawfully granted tax abatement. Because the right to appeal tax assessments is prescribed by statute both taxpayers and taxing districts must comply with the statute’s requirements. F.M.C. Stores Co., supra, 100 N.J. at 424, 495 A.2d 1313. The assessments imposed upon this improvement were included in Camden’s ratables used to strike the tax rates for, not only the city, but also, Camden County for the tax years 1982 through 1985. It would be unjust to penalize the remaining taxpayers of the city and county for plaintiffs’ failure to comply with the requirements of these statutes. Therefore, even if permissable, I conclude that there exists no equitable reason to waive the statutory prerequisites of either of these acts.
The judgment of the board for the tax year 1985 is affirmed.

Although not raised, and hence not passed upon, this court is cognizant of the additional jurisdictional issue of whether Camden, by its appeal to the board claiming tax-exempt status for one of its taxpayer’s property, has standing to initiate an appeal under N.J.S.A. 54:3-21 which requires the taxing district to be "discriminated against by the assessed valuation” of the property under appeal.