F.M.C. STORES CO., PLAINTIFF-RESPONDENT, v. BOROUGH
OF MORRIS PLAINS, DEFENDANT-APPELLANT.

EDISON MALL ASSOCIATES, PLAINTIFF-RESPONDENT, v.
TOWNSHIP OF EDISON, DEFENDANT-APPELLANT.

115 ACRES VENTURE/FIRST NATIONAL STATE BANK,
PLAINTIFF-RESPONDENT, v. TOWNSHIP OF EDISON,
DEFENDANT-APPELLANT.

Argued March 19, 1985—Decided July 30, 1985.

420

*John J. Harper* argued the cause for appellant Borough of Morris Plains (*Harper & Hansbury,* attorneys).

*Jonathan N. Harris* argued the cause for appellant Township of Edison (*Andora, Palmisano, De Cotiis & Harris,* attorneys; *Anthony D. Andora,* of counsel).

*Steven R. Irwin* argued the cause for respondents (*Mandelbaum & Mandelbaum,* attorneys).

The opinion of the Court was delivered by

HANDLER, J.

In each of these consolidated real property tax appeals, the taxpayer filed its appeal prior to the August 15 deadline prescribed by *N.J.S.A.* 54:3–21 and the municipality failed prior to the statutory deadline to file its appeal contesting its own tax assessment. The Tax Court granted motions by the municipalities for leave to file belated appeals challenging their original assessments. The Appellate Division reversed these rulings, holding that the taxing districts were required, in order to challenge their own original assessments as too low, to take their appeals by the August 15 statutory deadline. The Appellate Division also held that failure by the municipalities to take timely appeals precluded the Tax Court under these circumstances from granting increases in the original assessments, at least when discrimination is not an issue. *F.M.C. Stores Co. v. Borough of Morris Plains,* 195 *N.J.Super.* 373 (1984).

In the Edison Township cases, the taxpayers, Edison Mall and 115 Acres Venture/First National State Bank, filed on or about August 8, 1983 direct appeals to the Tax Court challenging their property assessment for 1983. They alleged both that these assessments were in excess of true value and were discriminatory. (This claim of discrimination, however, was, and is, not an issue.) The Township of Edison did not respond until March 23, 1984, when it moved for leave to file a late answer and counterclaim to challenge the original assessments. These motions were granted by the Tax Court over the taxpayers' objections, and on April 23, 1984 Edison filed its own tax appeal.

In the Morris Plains case, the taxpayer, F.M.C. Stores, filed a direct appeal to the Tax Court seeking a decrease in its property tax assessment for the year 1983, alleging both that it exceeded true value and was discriminatory. (Discrimination, as in the companion case, is no longer an issue.) The appeal was filed on or about August 15, 1983. Morris Plains filed an answer, which was dated August 15 but was not received by the Tax Court until August 18, 1982. On August 29, Morris Plains filed a motion seeking leave to amend its answer in order to add a counterclaim challenging its original assessment as being below both the true value and the common level. On October 17, 1983 the Tax Court granted this motion over the taxpayer's objection. On October 25, 1983 F.M.C. Stores filed a notice of motion for leave to appeal to the Appellate Division from the Tax Court's interlocutory order. This motion was denied by the Appellate Division on November 23, 1983. F.M.C. Stores then filed with this Court a notice of petition for certification, or, in the alternative, leave to appeal. The taxpayer in Edison Township also filed a notice of motion for leave to appeal to the Appellate Division on December 21, 1983. Following denial by the Appellate Division, the taxpayers brought a similar motion before this Court. We granted the motion in both cases, which were summarily remanded to the Appellate Division for consideration of the merits. 96 *N.J.* 302 (1984).

The cases were then consolidated by the Appellate Division for disposition.

The Appellate Division held that tax appeals filed by the municipalities after the August 15 statutory deadline were barred, and, in the absence of timely appeals by the taxing districts from their original assessments, the assessments could not be increased, at least when discrimination is not an issue. Each taxing district filed a notice of motion for leave to appeal, which we granted. 99 *N.J.* 189 (1984).

I.

The filing of a property tax appeal is governed by *N.J.S.A.* 54:3-21. This provision directs that both taxpayers and taxing districts aggrieved by the assessed valuation of property, or discriminated against by the assessed valuation of other property, may appeal to the county board of taxation on or before August 15 of that tax year.[1]

The basic rationale adopted by the Tax Court in these cases to permit the filing of appeals by the municipalities after the statutory deadline was that employed by the court in *Curtiss-Wright Corp. v. Wood-Ridge*, 2 *N.J. Tax* 143 (Tax Ct.1981). The municipality was there granted leave to file untimely counterclaims in order to avoid "a manifest and gross injustice" to other taxpayers in the taxing districts. 2 *N.J. Tax* at 153. Central to the position taken by the Tax Court in *Curtiss-Wright* was the perceived unfairness stemming from the fact that the challenged assessment was based on an artificially-manufactured compromise settlement rather than on normal valuation procedures.

The Appellate Division in these cases held that the August 15 statutory deadline was a nonmodifiable jurisdictional

---

[1] If the assessed valuation of the property that is subject to the appeal exceeds $750,000.00, then taxpayer or taxing district may file its appeal directly with the Tax Court. *N.J.S.A.* 54:3-21.

requirement; it rejected the rationale that the doctrine of relaxable court rules was applicable or could overcome statutory deadline requirements.[2] 195 *N.J.Super.* at 381. Because the right to appeal is prescribed by statute, taxing districts are required to comply with the time prescriptions for the filing of tax appeals, as with all other statutory requirements. *Id.* We agree.[3]

■ Strict adherence to statutory time limitations is essential in tax matters, borne of the exigencies of taxation and the administration of local government. *See, e.g., Princeton Univ.*

---

[2]In this case, in allowing the taxing district to file counterclaims after August 15, the Tax Court relied upon the asserted interrelationship of tax court and civil practice rules. It reasoned that Tax Court Rule 8:3-2 provides that "pleadings shall consist of the complaint and such responsive pleadings as shall be filed in the action * * *. In local property tax matters there may be a counterclaim * * *." Rule 8:3-7 identifies the rules that govern the form, content, and service of counterclaims, but it is silent with respect to the time period within which service of a counterclaim must be made. According to the Tax Court, Rule 4:1, however, fills this gap by providing that the rules governing civil practice in the superior court in Part IV are applicable to practice and procedure in the Tax Court when Part VIII, encompassing the Tax Court Rules, has provided no relevant rule. Thus, counterclaims were deemed to be subject to the time prescriptions established in Rule 4:6-1, *i.e.*, they must be served within 20 days after the service of the summons and complaint. The Tax Court then applied both Rule 4:74 which permits a pleader to add an omitted counterclaim by amendment to his pleadings "when justice requires," and Rule 4:9-3, which permits amended pleadings to relate back to the date of the original pleadings. *But see Prospect Hill Apartments v. Flemington,* 1 *N.J.Tax* 224, 227 (Tax Ct.1979) (direct appeals to Tax Court were untimely when received by mail on August 16; Rule 1:1-2, which states that "any rule may be relaxed or dispenses with by the court in which action is pending if adherence to it would result in an injustice," does not give court power to "relax or dispense with a statute of limitations passed by the Legislature and approved by the Governor.").

[3]We emphasize that this conclusion is founded on the perceived intent underlying the operative, legislative taxing scheme. Legislative policy could provide for a more flexible approach to filing deadlines when one party files an appeal on or just before August 15. See Assembly Bill No. 2556, passed by the Assembly on June 27, 1985, amending *N.J.S.A.* 54:3-21 to allow 20 more days for the opposing party to file a cross-petition or counterclaim.

*Press v. Princeton Borough,* 35 *N.J.* 209, 214 (1961); *N.Y., Susquehanna and W.R.R. v. Vermeulen,* 44 *N.J.* 491 (1965). This view has long been recognized by New Jersey courts and it has a solid policy basis. *Suburban Dep't Stores v. East Orange,* 47 *N.J.Super.* 472, 482 (App.Div.1957); *Montclair v. State Bd. of Tax Appeals,* 127 *N.J.L.* 382, 389 (Sup.Ct.1941). This policy has been specifically acknowledged and aptly explained by the Tax Court.

> The policy of applying strict time limitations to tax matters is based upon the very nature of our administrative tax structure. Municipal budgets must be finalized no later than the 90th day after the beginning of the budget year. *N.J.S.A.* 54:4–42. Real estate assessments, which constitute the bulk of a municipality's income are established as of October 1 of the pretax year. *N.J.S.A.* 54:4–23. Throughout our tax legislation, it is clear that our legislature has attempted to set out a well organized time-table for the purpose of enabling a municipality to ascertain the amount of taxable ratables within the jurisdiction in order that it might adopt a responsible and fairly accurate budget.
>
> [*Galloway Tp. v. Petkevis,* 2 *N.J.Tax* 85 (Tax Ct.1980).]

*See also McCullough Transp. Co. v. Div. of Motor Vehicles,* 113 *N.J.Super.* 353, 360 (App.Div.1971) ("Limitation periods for claims for refunds are common administrative provisions found in tax legislation and justified by the need for predictability of revenues by public agencies.")

■ Courts have recognized that both appealing taxpayers and taxing districts must adhere strictly to the deadlines prescribed by statute. Failure to file a timely appeal is a fatal jurisdictional defect. *Clairol v. Kingsley,* 109 *N.J.Super.* 22 (App.Div.), aff'd, 57 *N.J.* 199 (1970), appeal dismissed, 402 *U.S.* 902, 91 *S.Ct.* 1377, 28 *L.Ed.*2d 643 (1971). A petition of appeal with the county board of taxation pursuant to *N.J.S.A.* 54:3–21 filed after the statutory deadline has resulted in the dismissal of the taxpayer's appeal. *See Mayfair Holding Corp. v. North Bergen Township,* 4 *N.J.Tax* 38, 41 (Tax Ct.1982) (statutory filing requirement is an "unqualified jurisdictional imperative, long sanctioned by our courts."); *Sun Life Assurance Co. of Canada v. Orange,* 2 *N.J.Tax* 25, 28 (Tax Ct.1980) (failure to comply with filing deadline of *N.J.S.A.* 54:2–39 for appeal from

judgment of county board resulted in dismissal of taxpayer's claim).

The Appellate Division in this case rejected the taxing districts' argument that it is essentially unfair and contrary to public policy to bind a municipality to the August 15 deadline date when a taxpayer filed its appeal on or close to the deadline. The Appellate Division pointed out that

> [a] municipality has the obligation to satisfy itself as to the correctness of its assessments by the August 15 date. This is especially true in a reevaluation year in which every assessable property is reviewed. Moreover, where an assessment is substantial enough to warrant a direct appeal to the Tax Court, the municipality has not only the obligation but also a special incentive to review the correctness of the assessment. We recognize that a municipality may have a strategic advantage if it is able to challenge its assessment as too low when the taxpayer complains that it is too high. That strategic advantage was in fact acknowledged at oral argument by one of the municipal attorneys here. We are satisfied, however, that this consideration is beyond the framework of the statute and cannot constitute a basis upon which the court can relax the statutory time periods. [195 *N.J.Super.* at 384.]

The notion advanced by the municipalities that they will be at a disadvantage by imposing strict statutory filing deadlines on taxing districts misconceives the governmental interest at stake. They complain of the loss of a strategic edge in the adjudicatory process. However, the taxing district does not stand in the shoes of an ordinary citizen; the municipality and the aggrieved taxpayer are not to be analogized to private litigants competing through the judicial machinery for a tactical advantage.

■ We have in a variety of contexts insisted that governmental officials act solely in the public interest. In dealing with the public, government must "turn square corners." *Gruber v. Mayor and Tp. Com. of Raritan Tp.,* 73 *N.J.Super.* 120 (App.Div.), aff'd., 39 *N.J.* 1 (1962). This applies, for example, in government contracts. *See Keyes Martin v. Director, Div. of Purchase and Property,* 99 *N.J.* 244 (1985). Also, in the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. *See Rockaway v. Donofrio,* 186 *N.J.Super.* 344 (App.Div.1982); *State v.*

*Siris,* 191 *N.J.Super.* 261 (1983). It may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.

■■ Similarly, the statutory provisions governing substantive standards and procedures for taxation, including the administrative review process, are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end, it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity, *see Pantasote v. City of Passaic,* 100 *N.J.* 408 (1985), decided today. It follows that a municipality should undertake to appeal its own assessment only when it has good cause to believe the assessment does not reflect true value, and not simply to achieve a tactical advantage over, or even strategic parity with, a taxpayer that has independently appealed the assessment.

■ Consequently, we are unimpressed with the legal significance of the argument that a taxpayer will have an undeserved or untoward litigational advantage if the municipality is precluded from filing its own appeal when it attempts to do so after the statutory deadline. The municipality should not be influenced or swayed simply by the pendency of a taxpayer's appeal as a reason for filing its own appeal, absent independent grounds for believing in good faith that its assessment is erroneous.

## II.

The second issue presented is whether, and under what circumstances, the Tax Court can increase an original assessment in the absence of a timely appeal or cross-appeal by the

municipality affirmatively seeking such an increase. The Appellate Division, following *Borough of Matawan v. Tree Haven Apartments, Inc.*, 108 *N.J.Super.* 111 (App.Div.1969), held that in the absence of a timely appeal on the part of the taxing district, an original assessment could be increased only in discrimination cases and only for the purposes of ensuring that the assessment is within the common level range. *F.M.C.*, 195 *N.J.Super.* at 388. Cases involving claims that an assessment has been set discriminatorily, compared with the common level of assessment in the district, have consistently allowed the County Tax Board or court to increase an assessment even in the absence of a timely appeal by the municipality. *See, e.g., Weyerhaeuser Co. v. Borough of Closter*, 190 *N.J.Super.* 528 (App.Div.1983); *Fort Lee v. Hudson Terrace Apts.*, 175 *N.J.Super.* 221 (App.Div.), certif. den., 85 *N.J.* 459 (1980); *Devonshire Development Assocs. v. Hackensack*, 2 *N.J.Tax* 392, 184 *N.J. Super.* 371 (Tax Ct.1981). Permitting increased assessments in these cases can be explained by the overriding policies involved in such a case. A charge of discrimination implicates the constitutional right to equal protection of the law, *In re Appeal of Kents 2124 Atlantic Ave., Inc.*, 34 *N.J.* 21 (1961), and is the subject of particular legislative concern, *see N.J.S.A.* 54:51A–6 and *N.J.S.A.* 54:3–22 (so called Chapter 123; imposing on Tax Court and county board obligation to revise assessment when value ratio is outside statutory common level range); *Murnick v. Asbury Park*, 95 *N.J.* 452 (1984); *Weyerhaeuser, supra*, 190 *N.J.Super.* 528.

No such transcendent constitutional or statutory policies arise upon the assertion by a taxing district that its assessment was mistaken or has been erroneously calculated. However, a number of cases have allowed increases in assessments in non-discrimination cases, even in the absence of a timely municipal appeal. *Rabstein v. Princeton Tp.*, 187 *N.J.Super.* 18 (App.Div.1982); *Fort Lee v. Invesco Holding Corp.*, 6 *N.J.Tax* 255 (App.Div.1984); *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65 (App.Div.1965); *Rek Investment Co. v. Newark*,

80 *N.J.Super.* 552 (App.Div.1963). In *Rabstein,* the court observed that "there is no sound reason to give a taxpayer the benefit of an erroneous valuation simply because * * * the taxing district has failed to cross-appeal. * * * [O]ur Constitution forbids preferential treatment in real property taxation * * *." *Id.* 187 *N.J.Super.* at 24 (citing *Princeton Tp. v. Bardin,* 147 *N.J.Super.* 557, 566 (App.Div.), certif. den., 74 *N.J.* 281 (1977)).

The municipalities here advance this rationale in conjunction with the assertion that prohibiting the Tax Court from increasing an assessment in these circumstances harms other taxpayers who must pay more than their fair share of property taxes. As a general proposition, fairness in tax matters extends not merely to the individual taxpayer, but to all the taxpayers in the taxing district. The inequity visited upon other taxpayers and the public generally in such a case is frequently immeasurable and diffused and not comparable to the unfairness suffered by an individual taxpayer claiming that its assessment is discriminatory. *See Murnick v. Asbury Park, supra.* The arguments advanced by the municipalities overlook the point that the legislation prescribes a carefully structured procedural framework for resolving tax disputes and requires strict adherence to the statutory plan. The statutory scheme itself strikes the balance between the ultimate and general fairness that is achieved when government acts conscientiously and properly in accordance with the statutory standards and the apparent fairness to an individual taxpayer that is achieved in a particular appeal.

Additionally, the municipalities ignore the basis for the disparate treatment with which courts and the Legislature have regarded discrimination claims and those based on erroneous calculations of value. The goal of fixing assessments at precise true value "is rarely met uniformly throughout a taxing district." *Weyerhauser, supra,* 190 *N.J.Super.* at 532. Inevitably, calculated values will be higher or lower than if an assess-

ment had been ideally achieved in a perfect world. Both the municipality and the taxpayer may dispute an assessment, employing various methods of ascertaining value, but, as previously explained, the practicalities of taxation require certainty and predictability. The adverse parties are afforded clearly defined and strictly construed procedures for challenge. The resulting calculation may still be higher or lower than an ideal true value but the system provides frequent opportunities for reassessment; because of the exigencies of taxation, we tolerate temporary imperfection.

Discrimination in the taxing system, however, is not tolerated. In contrast to claims based on erroneous calculations of values, there is no good reason to tax similarly situated taxpayers at different percentages of true value. "If the assessment ratio applied to a parcel substantially exceeds the assessment ratio applied generally in a taxing district, the taxpayer has a right to relief." *Murnick, supra,* 95 *N.J.* at 458. Moreover, in Chapter 123 the Legislature has provided a formula for ascertaining the point at which a disparity constitutes a constitutional violation. A determination of discriminatory unfairness is the type of unfairness that requires a court to increase or decrease an assessment notwithstanding the failure of the aggrieved party to affirmatively plead for relief. *See Weyerhaeuser, supra,* 190 *N.J.* 528. An erroneous calculation of value does not implicate the same magnitude of unfairness.

As we observed in *Pantasote v. City of Passaic, supra,* 100 *N.J.* 408, appeals before the Tax Court, pursuant to *N.J. S.A.* 54:3–21, are *de novo,* but the Tax Court's right to make an independent assessment is not boundless. It must be based on the evidence before it and the data that are properly at its disposal. It must also be consistent with the issues as framed by proper pleadings or settled presumptive rules reflecting the underlying policy that governmental action is valid. *Pantasote,*

100 *N.J.* at 413. *See Inmar Associates, Inc. v. Edison Tp.*, 2 *N.J.Tax* 59, 66 (Tax Ct.1980) (citing *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N.J.Super.* 65 (App.Div.1965)); *Pennwalt Corp. v. Holmdel Tp.*, 4 *N.J.Tax* 51, 55 (Tax Ct.1982); *New Cumberland Corp. v. Roselle*, 3 *N.J.Tax* 345, 353 (Tax Ct.1981); *Filcrest Realty, Inc. v. Edison Tp.*, 2 *N.J.Tax* 77, 83 (Tax Ct.1980); *Lamm Assocs. v. Borough of West Caldwell*, 1 *N.J.Tax* 373, 387 (Tax Ct.1980).

As we held in *Pantasote,* the Tax Court is required to invest the municipal assessment with the presumption of validity. It may not disregard that presumption unless the taxpayer itself has adduced cogent evidence that serves to overcome it. Absent such countervailing testimony, or the factors we deemed relevant in *Pantasote,* it would be an abuse of discretion to increase the assessment without a proper pleading affirmatively seeking such relief.

We hold therefore that absent a proper claim for relief by the taxing district, the Tax Court may not on an appeal by the taxpayer increase an original tax assessment. However, if it appears from the evidence that is otherwise properly adduced on the appeal that the *quantum* of the assessment itself is so far removed from true value and that the original assessment methodology is patently arbitrary or capricious, the Tax Court may then properly determine true value in light of the evidence before it. These circumstances are not presented in these cases.

Accordingly, the judgment of the Appellate Division is affirmed.

*For affirmance*—Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—None.