CRABTREE, J.T.C.
This is a local property tax case wherein plaintiff seeks direct review, pursuant to N.J.S.A. 54:3-21, of the 1988 assessment on its property located at 345-349 Ramapo Valley Road, Oakland, New Jersey (Block 2318, Lot 10). The assessment was:
[[Image here]]
At issue are the true value of the subject property and the applicability of N.J.S.A. 54:51A-6, commonly referred to as chapter 123. The year 1988 was not a revaluation year.
The subject of the controversy is a neighborhood shopping center containing a Sears Roebuck & Co. outlet store (21,700 square feet), a free-standing National Community Bank building (3,916 square feet) and five satellite stores, with square *312 footages ranging from 1,440 square feet to 2,560 square feet. The aggregate area of satellite store space is 8,680 square feet. The land area is 4.8 acres. The shopping center was approximately 18 years of age on the assessing date and was well maintained. The rent roll in evidence showed that all satellite tenants occupied their stores under five-year leases at annual square foot rentals ranging from $7.20 to $9.96. All satellite store leases expire in 1988,1989, 1990 or 1991. The Sears lease was executed January 1, 1958 and expired December 31, 1987. The annual rental was $3.72 a square foot. National Community Bank occupies its building under a land lease, the details of which are not disclosed by the evidence.
Plaintiff’s expert estimated the true value of the subject property on the assessing date to be $1,800,000. In reaching this conclusion he utilized both the market data and income approaches to value, with principal reliance on the former.
His market data approach consisted of four sales of shopping centers in Bloomfield, Park Ridge, Belleville and Kinnelon. Bloomfield and Belleville are in Essex County, Park Ridge is in Bergen County and Kinnelon is in Morris County. Three of the sales took place in 1985, one in 1986. The building sizes of the sale properties ranged from 48,362 square feet to 78,000 square feet. The sale prices ranged from $38.94 a square foot to $46.85 a square foot. The effective ages of the sale properties varied from 8 years to 22 years. The expert provided income information on only one of these sales, the Meadtown Shopping Center in Kinnelon which was sold on May 29, 1986 for $3,500,-000.
The expert’s estimate of economic rent for the satellite stores was predicated upon rents charged at The Copper Tree, a shopping center located at 350 Ramapo Valley Road in Oakland, across the highway (Route 202) from the subject. The leases for the satellite stores in that shopping center ranged from $6 a square foot for 4,000 square feet of satellite store space to $15 a square foot for 1,050 square feet of satellite store space. Of the satellite store leases in the Copper Tree, five commenced in *313 1984, two commenced in 1985 and two began in 1986. The 1986 leases were for $9 and $9.66 a square foot; the 1985 leases were for $13 and $15 a square foot, while the 1984 leases ranged from $6 to $10 a square foot. The total square feet of rentable space, including 33,600 square feet occupied by a Grand Union supermarket, was 100,945, of which 23,229 were vacant on the assessing date.
The expert’s estimate of economic rent for the Sears store was predicated on two allegedly comparable leases of an A & S store and a Channel store in shopping centers located on Route 23 in Wayne, New Jersey. The A & S store, comprising 26,652 square feet, was leased on August 1, 1987 for $5 a square foot, plus common area maintenance and a 4% overage; the Channel store, comprising 22,000 square feet, was leased on February 1, 1987 for $2.50 a square foot plus common area maintenance and a 3% overage. The expert relied upon four allegedly comparable bank leases for his economic rent estimate of the National Community Bank. The comparable bank leases ranged from $11.25 a square foot to $18 a square foot, while the rentable areas in three of the four comparables, all of them free-standing bank buildings, were 4,000 square feet. The fourth comparable was a lease of 3,320 square feet in a multi-tenanted office building.
On the basis of the Copper Tree rentals, the A & S and Channel store rentals and the bank leases, the expert posited economic rent for Sears (21,700 square feet) at $6 a square foot, for the satellite stores (aggregate of 8,680 square feet as calculated by the expert) at $10 a square foot, and the National Community Bank building (3,800 square feet according to the expert) at $18 a square foot. He then assumed a 10% vacancy and collection loss allowance and a 22.7% expense ratio to arrive at an economic net income of $205,510.
Finally, he selected a capitalization rate of 10.94%, inclusive of real estate taxes, to arrive at a true value estimate under the income approach of $1,880,000. He relied for his capitalization *314 rate on data published by the American Council of Life Insurance for the fourth quarter of 1987.
Defendant’s expert estimated the true value of the subject property to be $3,670,000 on the assessing date. In reaching this conclusion he relied exclusively upon the income approach for the Sears store and the satellite stores and the cost approach for the National Community Bank building. In developing his economic rent estimate for the Sears store he relied upon three rentals in shopping centers located in Wayne, New Jersey and Chatham, New Jersey. Two of these rentals involved supermarkets of 35,000 square feet and 44,921 square feet and square foot rentals of $10 and $12.21. The supermarket leases began April 1, 1986 and November 1, 1987. In developing his economic rent estimate for the satellite stores the expert relied upon six rentals in various shopping centers located in Wayne, West Milford, Kinnelon, Lincoln Park and Oakland. The square foot rentals for these allegedly comparable satellite stores ranged from $14.40 for a November 1, 1984 lease in the Ramapo Plaza Shopping Center in Wayne to $17 for leases in Beaver Brook Mall in Lincoln Park commencing August 1,1988. The square feet of rentable area ranged from 750 square feet for the store in Ramapo Plaza Shopping Center to 3,000 square feet for a store in Beaver Brook Mall in Lincoln Park.
On the basis of these comparable rentals the expert estimated the economic rent for the Sears store at $9 a square foot and for the satellite stores at $16 a square foot.
The expert concluded that the National Community Bank building was a special-purpose structure and, accordingly, he estimated its value under the cost approach, utilizing computerized services of Marshall and Swift Valuation Service. Under this approach he estimated the true value of the bank building at $524,941, net of a 5% allowance for physical and functional depreciation. He estimated the effective age of the structure at nine years. The expert posited a 5% vacancy and collection loss allowance and 15% of effective gross income for expenses, *315 consisting entirely of management and reserves. The net operating income produced by these calculations was $269,850, which he capitalized at 9.4%, which did not include an effective tax rate.
Plaintiffs market data approach is not probative of the subject property’s true value. As stated in an authoritative text:
Unlike residential property, or even some office buildings, there are few shopping centers to which the Market Comparison Approach can be applied. Sales of similar shopping centers are not available, not because of lack of market demand but because centers are not similar ... Shopping centers also differ as to absence or presence of competition, composition or mixture of tenants, terms of leases, cost of construction and terms of mortgages, parking areas, and operating expenses.
Among neighborhood centers, some similarities may exist, for these usually contain supermarkets and drugstores with a small trade area. Neighborhood centers can be compared to some extent, but in every case differences exist with respect to lease terms, construction costs, and operating expenses. In neighborhood centers, as in regional centers, the Income Approach is the final determinant of value, and the Market Comparison Approach is of limited use. [Hoyt, “Appraisal of Shopping Centers,” Friedman, Encyclopedia of Real Estate Appraising (3 ed. 1978) 439 at 444].
In this case plaintiff’s expert provided no data with respect to the factors indicated in the quoted passage. Most important, he was unable to provide the most basic item, namely, the income from three of the four comparables. As shopping centers are bought and sold on the basis of their net income, id. at 441, the expert’s comparable sales are devoid of any probative utility. The evidentiary worth of an expert’s opinion is entirely dependent upon the facts and reasoning offered in support of it. Dworman v. Tinton Falls, 1 N.J.Tax 445 (Tax Ct.1980), aff’d. o.b. per curiam 3 N.J.Tax 1, 434 A.2d 1134 (App.Div.1981).
The expert’s income approach is flawed in several respects. To begin with, he offered no explanation as to how he arrived at $6 a square foot for the Sears store, utilizing the A & S and Channel rentals of $5 and $2.50 a square foot. Secondly, the expert’s explanation of his 10% vacancy and loss allowance, increased from his estimate of 5% for tax year 1987, that the competition for tenants increased between October 1, 1986 and *316 October 1, 1987 was not supported by the record and, in any event, was not convincing.
Finally, his satellite store rental of $10 a square foot was predicated substantially upon 1984 leases and a much larger shopping center. The comparable leases utilized by defendant’s expert, on the other hand, were more current and involved shopping centers comparable in size to the subject.
Moreover, the comparables utilized by defendant’s expert tend to show the relationship between anchor store rentals (Sears) and satellite store rentals.
As for the National Community Bank building, the conclusion of defendant’s expert that the structure is special purpose in nature, and thus, can only be valued under the cost approach is not supported by the record. In this regard, the economic rent of $18 a square foot for the bank posited by plaintiff’s expert is more probative.
Defendant’s expert’s assumption of a 5% vacancy and loss allowance is realistic, and his expense estimate of 15% of effective gross income is consistent with a landlord’s typical expense under net leases. The credible evidence supports the conclusion of defendant’s expert that tenants pay their pro rata share of real estate taxes. Hence, the capitalization rate will not include an effective tax rate.
In view of the foregoing, the court finds the true value of the subject property on October 1, 1987 to be $3,476,300, calculated under the income approach as follows:
Potential Gross Income:
[[Image here]]
*317 [[Image here]]
The true value herein determined exceeds the assessment. The tax year under review (1988) is not a revaluation year. Defendant filed no counterclaim, although it could have done so in this direct appeal within 20 days after service of the complaint pursuant to N.J.S.A. 54:3-21, as amended by L.1987, c. 185, effective July 14, 1987.
N.J.S.A. 54:51A-6 governs judicial revisions of property tax assessments in non-revaluation years. That statute provides:
a. Whenever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided.
b. If the average ratio is below the county percentage level and the ratio of the assessed value of the subject property to its true value exceeds the county percentage level, the tax court shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property.
c. If both the average ratio and the ratio of the assessed value of the subject property to its true value exceed the county percentage level, the tax court shall enter judgment revising the taxable value of the property by applying the county percentage level to the true value of the property.
Application of this statute is automatic; and, if warranted by the court’s finding of true value, an assessment may be increased pursuant to the statute whether or not a counterclaim has been filed seeking an increase. Weyerhaeuser Co. v. Closter Boro., 190 N.J.Super. 528, 464 A. 2d 1156 (App.Div. 1983); Devonshire Development Assoc, v. Hackensack, 2 N.J.Tax 392, 446 A.2d 201 (Tax Ct.1981). Our Supreme Court implicitly sanctioned this interpretation of the statute in FMC Stores Co. v. Morris Plains Boro., 100 N.J. 418, 495 A.2d 1313 (1985), where it noted the distinction between discrimination claims and claims of erroneous calculations of value. Id. at 428-430, 495 A. 2d 1313. The year under review in that case was a revaluation year, so discrimination was not an issue. *318 N.J.S.A. 54:51A-6(d). Thus, the municipalities having failed to file timely claims for increases in assessments, the court held that the assessments could not be increased, even though increases were otherwise warranted under the Tax Court’s findings of true value.
The average ratio referred to in N.J.S.A. 54:51A-6 is that ratio promulgated by the Director, Division of Taxation for a taxing district as of October 1 of the pretax year for school aid purposes, N.J.S.A. 54:1-35.1, and the common-level range is that range which is plus or minus 15% of the average ratio for a taxing district. N.J.S.A. 54:l-35a. For tax year 1988, the average ratio promulgated by the Director for defendant-municipality was 119.56%; the lower limit of the common-level range was 101.63%, and the upper limit of the common-level range was 137.49%. The ratio of assessment to true value as herein-above found is 83.24%. Thus, subsections (b) and (c) of N.J.S.A. 54:51A-6 are inapplicable because the average ratio is not below the county percentage level (100% in all counties) and the ratio of assessment to true value does not exceed the county percentage level. We are thus left with subsection (a), which on its face, requires application of a ratio in excess of 100% of the property’s true value, as the ratio of assessment to true value is below the lower limit of the common-level range.
Under exactly these circumstances this court held in Abe Schrader Corp. v. Secaucus, 8 N.J.Tax 390 (Tax Ct.1986) that, by virtue of other statutes setting true value as the upper limit of real property tax assessments, the assessment should be fixed at 100% of the property’s true value.
In Abe Schrader Corp., however, the municipality filed timely counterclaims in the two non-revaluation years. In the instant case, no counterclaims were filed.
The 1987 amendment to N.J.S.A. 54:3-21, giving a taxing district 20 days after service of a complaint in a taxpayer’s direct appeal to file a counterclaim, might be read to foreclose an increase in the original assessment if no counterclaim is filed within the prescribed time. On the other hand, the cases have *319 construed N.J.S.A. 54:51A-6 and its legislative antecedent to be mandatory except in revaluation years, i.e., if the court finds the ratio of assessed to true value to be below the lower limit of the common-level range it must increase the assessment by applying the general average ratio to the property’s true value, even where no counterclaim was filed seeking an increase.
N.J.S.A. 54:51A-6 and N.J.S.A. 54:3-21, as amended in 1987, form part of a comprehensive plan for judicial review of real property tax assessments, and thus, must be read in pan materia. Dvorkin v. Dover Tp., 29 N.J. 303, 148 A.2d 793 (1959). Where related statutes appear to conflict it is the court’s function to construe them so as to make a consistent, harmonious whole of the legislation. State v. A. No. J., 98 N.J. 421, 487 A.2d 324 (1985).
Thus, the apparent requirement of N.J.S.A. 54:3-21 that a counterclaim be filed in a direct appeal if the taxing district seeks an increase in the assessment must be confined to revaluation years in order to preserve the automatic, mandatory character of N.J.S.A. 54:51A-6, which by its terms, does not apply to revaluation years.
Judgment will be entered indicating the assessment to be:
[[Image here]]