NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____
                            :

J.D. GOLUB & CHERYL ABKEN-   :     TAX COURT OF NEW JERSEY
GOLUB,                                DOCKET NO: 011562-2018
           Plaintiffs,     :
           vs.              :
                            :

TOWNSHIP OF GALLOWAY,    :
           Defendant.    :
_____:

_____
                            :

STEVEN M. REPETTI,       :     TAX COURT OF NEW JERSEY
                            :     DOCKET NO: 011976-2018
           Plaintiff,     :
           vs.              :
                            :

TOWNSHIP OF GALLOWAY,    :
           Defendant.    :
_____:

Decided: March 15, 2019.

J.D. Golub and Cheryl Abken-Golub, Pro Se Plaintiffs
Steven M. Repetti, Pro Se Plaintiff

Thomas G. Smith for Defendant, Township of Galloway (Law Offices of Thomas G. Smith, PC).


**CIMINO, J.T.C.**

## I.    <u>INTRODUCTION</u>

The taxpayers seek to dismiss the Township's counterclaims on the basis that the Township did not file cross-petitions with the County Board of Taxation. For

-1-

the reasons set forth herein, the court determines that a counterclaim is not necessary in a non-revaluation year for a municipality to pursue such claim. However, actually having a counterclaim has procedural consequences and there is not any requirement for a cross-petition to be pursued below to allow a counterclaim in the Tax Court. Finally, the Township here has sufficiently demonstrated the counterclaims were brought in good faith to avoid dismissal.

II.    **STATEMENT OF FACTS**

Dr. David J. Golub and Cheryl Abken-Golub, are the owners of a residential property located in the Township of Galloway. Likewise, Steven M. Repetti, a neighbor, is the owner of a residential property in the Township of Galloway, as well. These named individuals are collectively referred to as the taxpayers. The taxpayers timely appealed their property tax assessments for 2018 to the Atlantic County Board of Taxation. The Board entered judgments affirming the original assessments. At the Board level, the Township did not file any cross-petitions.

The taxpayers appealed to this court, and by way of response to their respective complaints, the Township filed counterclaims seeking an increase in the original assessments as set by the assessor which were subsequently affirmed by the Board.

The taxpayers have now moved before this court to dismiss the counterclaims on the basis that cross-petitions were not presented before the Tax Board and that they were not brought in good faith.

## III. CONCLUSIONS OF LAW

A taxpayer can appeal the assessed valuation of his property to the county tax board. N.J.S.A. 54:3-21. If the taxpayer is thereafter dissatisfied with the judgment of the county board, the taxpayer can again appeal to the Tax Court. N.J.S.A. 54:51A-1.[1] The Tax Court determines all issues of fact and law de novo. N.J.S.A. 2B:13-3(b).

Appeals are typically handled according to the principles of Chapter 123 enacted by the legislature in 1973, and effective starting with the 1978 tax year. L. 1973, c. 123, §7, amended by L. 1974, c. 96, §1; L. 1976, c. 33, §1. However, there is a distinct difference between appeals occurring in a year in which the taxing district has completed and put into operation a district-wide revaluation or reassessment, and the years in which this has not occurred.[2] As explained by Judge Axelrad in Campbell Soup Co. v. City of Camden, 16 N.J. Tax 219, 228 (Tax 1996):

---

[1] In instances in which the value of the property exceeds one million dollars, the taxpayer can appeal directly to the Tax Court. N.J.S.A. 54:3-21(a)(1), 54:51A-2.

[2] Revaluations are completed by an outside appraisal firm. N.J.S.A. 54:1-35.35. Reassessments are completed by the assessor. N.J.S.A. 54:1-27.

In a non-revaluation [or non-reassessment] year, Chapter 123 provides authority for the court to raise an assessment, even in the absence of an affirmative request by the taxing district. In this respect Chapter 123 operates substantively in the nature of an automatic counterclaim. Procedurally, however, if taxpayer withdraws its complaint prior to the close of proofs, absent a counterclaim seeking an increased assessment, the court no longer has jurisdiction to order any relief regardless of the mandates of Chapter 123. R. 8:3-9. The existence of Chapter 123 itself puts taxpayer on notice that its assessment might be increased even in the absence of a municipal counterclaim. This is the risk taxpayer took when it appealed . . . .

[Ibid.]

A number of other decisions have set forth this same proposition. 90 Riverdale, L.L.C. v Borough of Riverdale, 27 N.J. Tax 328, 336 (Tax 2013); Gale & Kitson Fredon Golf, L.L.C. v. Township of Fredon, 26 N.J. Tax 268, 279 (Tax 2011); Passaic Street Realty Assoc., Inc. v. Garfield City, 13 N.J. Tax 482, 487-488 (Tax 1993). These decisions, including Campbell, agree with F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 428 (1985), in which the Court noted that "[c]ases involving claims that an assessment has been set discriminatorily [i.e. Chapter 123 cases] . . . have consistently allowed the County Tax Board or court to increase an assessment even in the absence of a timely appeal by the municipality."[3]

---

[3] Taxpayers primarily rely upon Rabstein v. Township of Princeton, 187 N.J. Super 18 (App. Div. 1982), an interlocutory appeal in which the Tax Court dismissed an affirmative counterclaim in a case not involving discrimination. Id. at 20. The Appellate Division on remand allowed pursuit of an increase despite affirming

Ibid.  See also F.M.C. Stores Co. v. Morris Plains, 195 N.J. Super 373, 386-87 (App. Div. 1984), aff'd, 100 N.J. 418 (1985).

As to the notice which the decisions refer, Chapter 123, now codified at N.J.S.A. 54:51A-6, provides "[w]henever the tax court is satisfied by the proofs that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property except as hereinafter provided."  N.J.S.A. 54:51A-6(a) (emphasis added).  The "common level range" is plus or minus fifteen percent of the "average ratio."  N.J.S.A. 54:1-35a(b).  The "average ratio" or Chapter 123 ratio is promulgated by the Director of the Division of Taxation each year.  N.J.S.A. 54:1-35a(a).  The Director compares property assessments to actual sales to come up with a ratio that is applied for tax appeal purposes.  See N.J.S.A. 54:1-35a(a), 35.1 to 35.3, N.J.A.C. 18:12A-1.14(b)(1)(v)-(viii).

As more succinctly stated by Judge Small in Passaic Street Realty, "[i]f the ratio of the assessed value to the fair market value is greater than 115% or less than 85% of the chapter 123 ratio, then the assessment will be the fair market value of the

<hr>

dismissal of the affirmative counterclaim.  Id. at 23-24.  Subsequently, in F.M.C. the Supreme Court overruled Rabstein in part by generally disallowing pursuit of an increase in a case not involving discrimination absent an affirmative counterclaim.  Id., 100 N.J. at 428-31.

property multiplied by the chapter 123 ratio." Id. at 485.[4] Prior to the Legislature directing the Director to promulgate this ratio, it was difficult for taxpayers to establish that they were discriminated against as to their assessments, since they had to complete extensive statistical studies. Marnick v. City of Asbury Park, 95 N.J. 452, 459 (1984). While Chapter 123 is not the exclusive method of proving discrimination, it should be used, except in the most extreme or severe circumstances. Id. at 463.

The purpose of Chapter 123 is to determine if there is discrimination from one property to the next. The goal of Chapter 123 is to place property assessments under appeal within the common level range (i.e., plus or minus 15%) regardless of whether that results in an increase or decrease. With a revaluation or reassessment, all properties are presumed to be reset to 100%.[5] Since Chapter 123 does not apply in a revaluation or reassessment year, (see N.J.S.A. 54:51A-6(d)), the taxpayer is without the notice provided by Chapter 123 (codified at N.J.S.A. 54:51A-6(a)) that

---

[4] There are special situations in which the assessment exceeds 100% of the fair market value, which are not necessary for discussion here. N.J.S.A. 54:51A-6(b), (c).

[5] This presumption can be overcome. See M.I. Holdings Inc. v. Jersey City, 12 N.J. Tax 129, 142 (Tax 1991).

there is a possibility of an increase in the assessment.[6]   Campbell, 16 N.J. Tax at

229.  See, e.g., Elrabie v. Borough of Franklin Lakes, 24 N.J. Tax 158, 186 (Tax

2008) (revaluation case with no counterclaim, no increase permitted); Appel v.

Englewood, 15 N.J. Tax 537, 546 (Tax 1996) (direct appeal to tax court, reevaluation

case with no counterclaim, no increase permitted).  To be clear, the case before the

court does not involve a revaluation or reassessment year.

Some confusion arises from attempting to synthesize the plethora of decisions

dealing with this issue.  What is notable is Chapter 123 clearly provides notice that

an appeal in a non-revaluation year can result in an increase in an assessment.

N.J.S.A. 54:51A-6(a).  The consistent dichotomy that has been established in

interpreting Chapter 123 turns on whether the appeal concerns assessment

discrimination in which Chapter 123 applies, N.J.S.A. 54:51A-6(a), or, conversely,

revaluation or reassessment years in which Chapter 123 does not apply,  N.J.S.A.

54:51A-6(d).

Since the tax year in question is not a revaluation or a reassessment year, the

taxpayers are on notice pursuant to the express terms of Chapter 123 that if the

assessed value of their property to the fair market value as determined by the court,

falls below the lower limit of the common level range, which is 15% below the

---

[6]  If the assessment is far removed from true value, or the original assessment methodology is patently arbitrary or capricious, the court can still increase an assessment despite no counterclaim in a reevaluation year.  F.M.C., 100 N.J. at 431.

average or Chapter 123 ratio, the court can increase the assessed value of the property. For example, the assessed value of Dr. Golub's property is $231,500. The Chapter 123 ratio for Galloway Township for 2018 is 97.88%. The common level range is plus or minus 15% of the average ratio.[7] Likewise, the lower limit is 83.20% (97.88% x .85). Thus, if the court determines that the value of the property is more than $278,245 ($231,500/.8320), the court would be compelled by law to raise the assessment of the property.

Despite the automatic counterclaim, the motion to dismiss the affirmative counterclaim is not merely academic. Absent an affirmative counterclaim seeking an increased assessment, a taxpayer can unilaterally withdraw its complaint prior to the close of proofs and the court no longer has jurisdiction to order any relief regardless of the mandates of Chapter 123. R. 8:3-9. Campbell, 16 N.J. Tax at 228. Thus, the affirmative counterclaim has a significant consequence as to a plaintiff's ability to unilaterally dismiss the case at any point, and defendant's ability to pursue his counterclaim.

As to the need for a cross-petition at the county board, "[n]owhere in the statute or court rule does it state that filing an affirmative claim for relief at the

_____

[7] In this case the upper limit is calculated as 112.56%. However, per N.J.S.A. 54:51A-6(b) the upper limit is capped at 100%. Thus if the Golubs established that the value of the property is below $231,500 ($231,500/1.0), they would be entitled to a reduction.

county board level is a prerequisite to asserting a counterclaim in an appeal of that board's judgment to the Tax Court." Campbell, 16 N.J. Tax at 224. See also City of Elizabeth v. 264 First St. LLC, 28 N.J. Tax 408, 447-48 (Tax 2015). The tax court shall determine all issues of fact and law de novo. N.J.S.A. 2B:13-3(b). By using the term de novo, the Legislature intended that this court review the original assessment completely anew. Campbell, 16 N.J. Tax at 225. "Since the county board hearing and Tax Court case are separate and distinct proceedings, governed by different rules, [the municipality's] failure to assert an affirmative claim for relief in the initial appeal of the . . . assessment to the county board does not preclude it from filing a counterclaim in the Tax Court." Ibid. Moreover, Chapter 123 has a separate section which similarly applies to county tax boards. L. 1973, c. 123, § 3. N.J.S.A. 54:3-22(c). Thus, a taxpayer is on notice of the potential for an increase absent an affirmative cross-petition before a county board. Overall, throughout a challenge to an assessment, a taxpayer is on notice of the potential for an increase.

To summarize, regardless of whether the counterclaim was filed, since this is neither a revaluation nor reassessment year claim, the Township can pursue an increase. The taxpayers are placed on constructive notice through the adoption of Chapter 123 that an appeal can result in an increase in taxes. Thus, there is not any reason to bar pursuit of counterclaims before this court. The existence of affirmative counterclaims, as opposed to the automatic counterclaims provided by Chapter 123,

has procedural consequences in that it precludes the taxpayers from unilaterally withdrawing their claims as well as how the matter moves through trial.

From a practical perspective, allowing a counterclaim makes sense and protects all taxpayers in a municipality. In most municipalities, the assessor has thousands of properties to keep track of and monitor. Sometimes a property does not come to the full attention of the assessor until a tax appeal is filed. Upon the filing of a tax appeal, a competent assessor would investigate the property by driving by, examining construction permits, and the like. With tens, hundreds, or even thousands of appeals, it may not be possible for the assessor to evaluate all the properties and in good faith file a cross-petition in the tax board within twenty days. See, N.J.S.A. 54:3-21(a). However, the Supreme Court in F.M.C. recognized that an incorrect low assessment affects all the other taxpayers who have to make up the shortfall. See Id., 100 N.J. at 429. While the municipality may, due to timing, have to pursue the relief afforded to it by an automatic cross-petition before a tax board, if a taxpayer seeks an appeal to the Tax Court, the municipality should not be precluded from filing an affirmative counterclaim, even though a cross-petition has not been filed before the tax board. By the time the initial appeal to the tax board is filed, the hearing held, and the judgment entered, many months may have passed and the assessor or municipality will have had the full opportunity to determine if a counterclaim is warranted in accordance with F.M.C.'s square corners doctrine.

To appeal the amount as set by the assessor, a municipality is going to have to hire an outside appraiser or the assessor has to revisit the initial assessment. This involves a certain investment of time and money, and it would be manifestly unfair to the other taxpayers if a taxpayer can take a hearing to the brink and then withdraw same unilaterally, thus foreclosing the municipality from proceeding despite expending time, effort and money, and having determined the property is under-assessed.

Having considered that the counterclaim is proper from a procedural standpoint, the court now addresses the taxpayers' argument that the counterclaim should be dismissed on substantive grounds. "[G]overnmental officials act solely in the public interest [and] [i]n dealing with the public, government must 'turn square corners.'" F.M.C., 100 N.J. at 426. The statutory provisions of taxation "are premised on the concept that government will act scrupulously, correctly, efficiently, and honestly. It is to be assumed that the municipality will exercise its governmental responsibilities in the field of taxation conscientiously, in good faith and without ulterior motives. To that end it is expected that it will make proper assessments, which are accorded a strong presumption favoring their validity . . ." F.M.C., 100 N.J. at 427.

"[A] municipality should undertake to appeal its own assessment only when it has good cause to believe the assessment does not reflect true value, and not simply

to achieve a tactical advantage over, or even strategic parity with, a taxpayer that has independently appealed the assessment." Ibid. "The municipality should not be influenced or swayed simply by the pendency of a taxpayer's appeal as a reason for filing its own appeal, absent independent grounds for believing in good faith that its assessment is erroneous." Ibid.

A matter in the Tax Court is commenced with the filing of a complaint. R. 8:3-1. In response, a counterclaim may be filed. R. 8:3-2(b). All pleadings shall generally accord as to form with the rules governing pleadings in the Superior Court. R. 8:3-3. In interpreting the adequacy of Superior Court filings, the New Jersey Supreme Court has indicated that the standard is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Electronics, Corp., 116 N.J. 739, 746 (1989). More importantly for the purpose of this case, "[a]t this preliminary stage of the litigation the Court is not concerned with the ability of [a party] to prove the allegation contained in the [pleading]." Ibid. "For purposes of analysis [parties] are entitled to every reasonable inference of fact." Ibid. In other words, it is not the job of the court to determine whether the facts alleged are true, but rather whether the party sets forth a cause of action. In this case it can hardly be disputed that the municipality has plainly and adequately set forth a cause of action in the counterclaims for an increase of the assessments.

However, taxpayers challenge whether the counterclaims are brought in good faith. Per R. 1:4-8(a), the signature of an attorney or party "certifies that to the best of his or her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . [1)] the factual allegations have evidentiary support or, [2)] as to specifically identified allegations, they are either likely to have evidentiary support or they will be withdrawn or corrected if reasonable opportunity for further investigation or discovery indicates insufficient evidentiary support." R. 1:4-8(a)(3). The Township submitted a certification from their counsel, who indicated that he has represented the Township for some fifteen years as special tax counsel, and over the course of the past thirty years has represented some twenty municipalities in Atlantic and Cape May counties in tax matters. Counsel indicated that he was very familiar with the market in Atlantic and Cape May Counties. Counsel further indicated that around 2005-2006, the market started to decline and by 2013 the economic decline in Galloway Township was substantial and the township had over 3,000 appeals before the Atlantic County Tax Board. Counsel further indicated that since 2014 it has been his observation that values for usable sales in the Township have been increasing. Counsel seems to attribute the number of appeals that were filed to a mindset of many taxpayers that because of the closing of a number of casinos in Atlantic City values must still be decreasing.

Counsel also certifies that Galloway Township has had three different tax assessors in four years, with the most recent assessor being retained in February of 2018. The current assessor did not complete the assessment currently being appealed. Nevertheless, counsel has indicated that he has discussed the properties which are the subject of these appeals with the assessor, and filed the counterclaims based upon the assessor indicating that the properties may be under-assessed.

Since counsel spoke with the assessor, who indicated that the assessments may be too low, the requirement that the factual allegations have evidentiary support is satisfied. This, in and of itself, provides a good faith basis for the filing of the counterclaims.[8]

To determine whether there is good faith, the role of the court is not to conduct an evidentiary hearing which would essentially entail the ultimate merits of a counterclaim. That is for the time of trial. The necessary showing of good faith on this motion is no more onerous than the requirement that attorneys must seek the concurrence of the assessor to enter into a stipulation of settlement of a matter. See

---

[8] The Court need not consider whether the second basis set forth is adequate. As a second basis for the counterclaim, the Township's tax counsel indicated that based upon his some thirty years' experience as a tax litigation attorney in the geographic area, he had a belief that the properties were indeed under-assessed. This clearly falls within the rubric that specifically identified allegations in a pleading are "likely" to have evidentiary support. R. 1:4-8(a)(3). Obviously, if that "likely" evidentiary support did not materialize (i.e. assessor or appraiser did not agree), counsel on behalf of the Township would have to reconsider the position.

Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 8:9-5 (2019) (explaining the common practice of having attorneys certify concurrence of the assessor before executing a stipulation of settlement). The Township has satisfied the requirement that the counterclaims have an underlying good faith basis. Nonetheless, at the end of the day, the Township is left to its proofs as to whether it can ultimately establish an increase in the assessments.

## IV. CONCLUSION

For the foregoing reasons, taxpayers' motions to dismiss are denied.