**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



MALA SUNDAR
JUDGE

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

November 5, 2020

William and Kathleen McGonigle
Plaintiffs, Self-Represented

Kerry E. Higgins, Esq.
McKenna Dupont Higgins & Stone
Attorney for Defendant

Re: William and Kathleen McGonigle v. Borough of Freehold
<u>Docket No. 006449-2020</u>

Dear Plaintiffs and Counsel:

This is the court's decision affirming the judgment of the Monmouth County Board of Taxation (County Board) which had upheld the 2020 local property tax assessment of $587,100[1] on plaintiffs' residence located in defendant taxing district (Borough), identified as Block 48, Lot 26 (Subject).

The Subject is a lot measuring 100 x 190 square feet (SF) or about 0.43 acres in the Borough's R-5 zone. It is improved by a single-family home with 4,990 SF of gross living area (GLA). The home is about 115 years old, with two bedrooms and, per the assessor, 5 ½ baths. It has an unfinished basement, an unfinished attic, and two non-working chimneys. It has had no renovations other than a kitchen remodeling. It does not have central air conditioning. Plaintiffs agreed that the residential space was in decent condition.

---

[1] Allocated $149,100 to land; $438,000 to improvements.





Per plaintiffs, the Subject is located on a busy street and due to the road's curve, cars spin out of control and come onto the Subject causing property damage. One such accident was in November of 2019, and cost plaintiffs about $5,000 in estimated damages.

A portion of the home of 1,497 SF was being used as plaintiff husband's dental practice until four years ago when he retired. A variance was obtained so the space could be used for office purposes. The lot has ten parking spaces for this purpose. Photographs of the space show loose wires, some gaps in ceiling drop tiles, worn floors, dated paneling, and signs of general non-use. Plaintiffs maintained that this space was shabby, worn, and in need of extensive renovations to make it a livable residential space.

As support, plaintiffs proffered the testimony of a cost-estimator, the principal of a home modeling company, who testified that it would cost about $164,000 to convert the unused office space into living space for plaintiffs' use, entailing removal of the existing nine to ten rooms, replacing or updating the existing heat and plumbing, and constructing two bedrooms, 2½ bathrooms, laundry room, and a kitchen.[2] To convert and update the area into one large living space would cost around $100,000. Another alternative would be to demolish this portion of the house, re-side it, and fill in the basement portion underneath the space at a cost of around $100,000. Alternatively, the basement portion could remain but the area above it would be knocked out and flattened for a cost of about $125,000. Although not in the business of improving and remodeling commercial properties, he stated that it would cost much more to renovate the space for commercial office use due to stricter legal requirements.

---

[2] This way the home would be more of a ranch-style and more safe/appropriate for plaintiffs due to their advancing age.

Plaintiffs also relied upon four sales of properties in the Borough to show that the Subject was over-assessed. These were:

| Address | Sold | Sale Price | Features |
|---|---|---|---|
| 80 Broad St | 10/03/19 | $355,000[3] | 5621 SF GLA; 4 full baths; Zone R-7 |
| 63 South St | 03/13/19 | $550,000 | 4-family rental; two 1-bedroom units; two 2-bedroom units; Zone B-2 |
| 3 Monument St | 11/13/19 | $575,000 | 1.39-acre lot; purchased subject to obtaining variance for law office; Zone R-7 |
| 15 Monument St | 02/08/19 | $425,000 | former bed-and-breakfast with 6 bedrooms and attached bathrooms; central AC; converted for use as a law firm; Zone R-7 |

Plaintiffs argued that the non-use of the 1,497 SF space in the Subject, the cost to convert it into a living space, the Subject's unsafe location, and the sale prices of the comparables (with most emphasis on Sale 1 since, per plaintiffs, it was in need of renovations like the Subject) support the Subject's value as $500,000. They note that the Subject should be assessed as for residential only since (1) it has not been income producing for the last four years; (2) they cannot rent the erstwhile office space since the zoning laws require the home to be owner-occupied to use a portion as office space; (3) the new owner would likely have to get his/her own variance to use the Subject for a home office; (4) they intend to use the Subject and therefore sell it only as a residence; and (5) properties sell for more if only for residential use.

The Borough's assessor testified that the highest and best use (HBU) of the Subject, as improved, is residential with commercial (i.e., home office) use, the same being in conformance with the zoning laws, and maximally productive since variances run with the land. He also

---

[3] The property was listed for $570,000 which plaintiffs verified with a realtor.

testified that: (1) Sale 1 (80 South Street) did not have a variance when sold; and (2) Sale 4 (15 Monument Street) was sold December 2018 as a short sale via an auction for $425,000 while the February 2019 sale was for One Dollar and to transfer title to an entity owned by the buyer.

**FINDINGS**

The Subject's R-5 zone allows a home office use after obtaining a variance for the same. The Borough is correct that variances run with (i.e., attaches to) the land and is not only for the personal benefit of the current owner. See Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 432-33 (2000). This means successive owners buy the property with the benefits of the granted and approved variance. Thus, if the Subject is sold, it will already have the variance for use as a home office and the purchaser would not need to start or obtain a new approval process for such variance.

Further, because approval and variance for use of the Subject for a home office are already in place, it would be maximally productive to use it as such under an HBU analysis. See Clemente v. Twp. of South Hackensack, 27 N.J. Tax 255, 268 (Tax 2013) ("The highest and best use analysis requires sequential consideration of the following four criteria, determining whether the use of the subject property is: 1) legally permissible; 2) physically possible; 3) financially feasible; and 4) maximally productive.") (citations omitted), aff'd, 28 N.J. Tax 337 (App. Div. 2015). This then supports the assessor's reasoning that the HBU of the Subject, as improved, is for a home office, since it is legally permissible[4] and use of the Subject with its existing variance and sufficient parking spaces would be maximally productive regardless of plaintiffs intention to only reside at the Subject and their subjective belief that properties for pure residential use

---

[4] The Borough agreed that the Subject's zone R-5, as well as the R-7 zone permit home office use with a variance approval.

would sell for more than those approved for a home office use. See Clemente, 27 N.J. Tax at 268 (A HBU "determination is not based on value-in-use because the determination is a function of property use and not a function of a particular owner's use or subjective judgment as to how a property should be used.") (citation omitted).

Keeping the Subject's HBU in the forefront, the court examines the comparable sales proffered by plaintiffs. Sale 2 (63 South Street) is not a reliable indicator of the Subject's value. It is in Zone B-2, and as conceded by plaintiffs, an income-producing property (multi-family rental) unlike the Subject. Thus, it does not have the same HBU as the Subject. The court therefore agrees with the Borough that it is not comparable to the Subject.

Sale 4 (15 Monument Street) is questionable as a reliable indicator of the Subject's value because it was a short sale and sold at an auction. Plaintiffs proffered no proofs to show that regardless, the sale was at arms-length. Indeed, plaintiffs were unaware that the property was sold as a short sale.

This leaves Sales 1 and 3. Plaintiffs' reliance on the unadjusted sale price of Sale 1 (80 Broad Street) as a reliable indicator of the Subject's value is questionable. They did not personally inspect the property in support of their allegation it needed renovation but relied on the owner's allegation to this effect during the County Board hearing his challenge to the property's 2020 assessment. Further, the hearing resulted in a judgment at about $480,000, thus, more than the property's sale price. Plaintiffs were unaware whether the property was sold with a variance for a home office. The assessor credibly testified that there was no variance at the time of sale. Without variances, it is reasonable to conclude that the sale price would be lower (i.e. will not include the cost and time savings in obtaining a variance approval).

Comparable 3 (3 Monument Street) appears to be the only reasonable comparable since it was a former residence and was sold after approvals were obtained to use the property as a law office. The assessor noted that the sale price did not include the cost for approvals, however, there was no objective evidence in this regard (such as the contract of sale).[5] He also stated that the property was inferior to the Subject having a smaller GLA of 3,333 SF, and unlike the Subject, lacked parking spaces and a retention basis. These facts were unrefuted by plaintiffs. As such then, the unadjusted sale price at $575,000 does not provide a reasonable basis to reduce the Subject's value to $500,000 as sought for by plaintiffs. Note also that one sale is generally *not* considered as a sufficient sampling of the market for the Subject. See Briskin v. City of Atlantic City, 6 N.J. Tax 187, 190 (Tax 1983) ("One sale does not necessarily make a market [and, thus] is not controlling on the issue of value."); Lorenc v. Twp. of Bernards, 5 N.J. Tax 39, 49 (Tax 1982) ("a single sale is not a sufficient sampling to arrive at a firm conclusion" since it does not help establish "a definite trend from which a reasonable conclusion can be drawn");

As to plaintiffs' cost estimate evidence (which the court finds credible as was the witness who proffered the testimony): plaintiffs' decision to close the erstwhile dental practice does not require a conclusion that the unused space reduces or lowers the Subject's value. As noted above, the Subject's HBU as improved is for a home office use. Thus, and as the Borough points out, it could be sold as such and the existing non-used dental office space can be used for any other similar or other home office use.

Plaintiffs appear to contend that the cost estimates should be considered as a reliable basis for a "condition" adjustment. For instance, they provided the MLS listing for 3 Monument Street

---

[5] Plaintiffs stated that there was a public hearing July and August of 2019, and a resolution was memorialized September 18, 2019. The sale date was after this, in November 2019.

which advertises the property as having an updated kitchen and butler's pantry, hardwood floors and attractive woodwork, additional beds, and has a much larger lot size, to show that this property is superior to the Subject which lacks these features.

Generally, condition adjustments are made to the sale prices of reliable comparables (upward if the comparable is inferior to the Subject or downward if the comparable is superior to the Subject). Such adjustments are made either as a dollar amount or a certain percentage of the sale price, the credibility of the same being tested by the appraiser's expertise and his or her use of objective market data. Here, no such adjustment can be made - the court has found all four comparable sales as problematic therefore the question of providing a condition adjustment is moot. Even if the court were to consider the sale price of 3 Monument, it cannot consider the MLS advertising as the truth especially since plaintiffs never personally inspected the property to verify the condition and existence of these features (other than the larger lot size which the Borough concedes). Additionally, cross-examination showed plaintiffs were unaware that 3 Monument was renovated post-sale. The court also cannot arbitrarily assign a 5% or 10% deduction to the assessment based solely on the un-used condition of the erstwhile office space in the Subject or speculate an appropriate depreciation to the cost estimates provided. While the photographs do show wear and tear in the space, this should be balanced with (1) the condition of the rest of the Subject which plaintiffs concede is in good condition; and (2) the assessor's testimony that the Subject's condition is normal for it chronological age.

Plaintiffs' contention for a value reduction due to the traffic spin outs onto the Subject could have had some merit if the court were to have been provided objective information that the spin outs were attributable to the road curves (as opposed to driver carelessness or speeding). Thus, while the two photographs do evidence the accidents, in the absence of proof that the road

curvature or high traffic attributed to the accidents, the court is unable to provide a value reduction. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 430 (1985) (court can only find value based "on the evidence before it and the data that [is] properly at its disposal.").[6]

## CONCLUSION

For the above reasons, the court finds that plaintiffs have failed to produce sufficient evidence to overcome the presumptive validity of the judgment of the County Board. An Order affirming the County Board's judgment will accompany this opinion.

Very truly yours,

Mala Sundar, J.T.C.

---

[6] The court notes that the Borough provided a 10% reduction in the assessment allocated to land for Sale 1 (63 South Street) for "traffic." The assessor also testified that the property was located at a busy traffic intersection. Thus, it appears that the Borough would provide assessment reductions for high-traffic as impacting land values.