**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3818-22
                    A-0670-23

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO P.L. 2018, C. 17.

IN THE MATTER OF THE
REQUEST FOR EXTENSION
OF TREC ELIGIBILITY FOR TI
APPLICATION NUMBER
NJSTRE1547322414, LIBERTY
DRUG, 195 MAIN STREET,
CHATHAM TOWNSHIP, MORRIS
COUNTY, NEW JERSEY 07928.

_____

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO P.L. 2018, C.17.

IN THE MATTER OF REQUEST
FOR EXTENSION OF TREC
ELIGIBILITY FOR TI APPLICATIONS
NUMBERED NJSTRE1547531989,
NJSTRE1547530191, NJSTRE1547530199,
NJSTRE1547530211, NJSTRE1547530214,
NJSTRE1547530216, NJSTRE1547530218,
AND NJSTRE1547530225.

IN THE MATTER OF REQUEST FOR
EXTENSION OF TREC ELIGIBILITY
FOR TI APPLICATION NUMBERED
NJSTRE1547534369 LANDMARK
LIQUORS, 1 WEST STREET, BOROUGH
OF GLASSBORO, GLOUCESTER
COUNTY, NEW JERSEY.

_____

Submitted January 6, 2026 – Decided March 9, 2026

Before Judges Rose and DeAlmeida.

On appeal from the New Jersey Board of Public Utilities, Docket Nos. QO19010068, QO22080487, QO22090564, and QO22090571.

R. William Potter, attorney for appellants Ecological Systems, LLC, and NJ Solar Power.

Matthew J. Platkin, Attorney General, attorney for respondent Board of Public Utilities (Donna Arons, Assistant Attorney General, of counsel; Steven A. Chaplar, Deputy Attorney General, on the brief).

Brian O. Lipman, Director, attorney for respondent Division of the Rate Counsel (Brian O. Lipman, Maura Caroselli, Managing Attorney, and Andrew H. Gold, Assistant Deputy Rate Counsel, on the brief).

PER CURIAM

In these consolidated appeals: (1) petitioner Ecological Systems, LLC (Ecological) appeals from the November 9, 2022 order of respondent New Jersey Board of Public Utilities (BPU or Board) denying its request for an

2

extension of time to complete a solar energy project registered in the Board's Transition Incentive (TI) program and the Board's June 29, 2023 order denying its motion for reconsideration of the November 9, 2022 order; and (2) petitioner NJ Solar Power (NJ Solar) appeals from the Board's September 18, 2023 order denying its request for an extension of time to complete nine solar energy projects registered in the TI program. We affirm.[1]

I.

Pursuant to the Solar Act of 2012, N.J.S.A. 48:3-51 to -87, the BPU administered the Solar Renewable Energy Certificate (SREC) program to incentivize the development of solar energy projects in this state. N.J.S.A. 48:3-87. The SREC program provided payments to newly constructed solar energy generators in the form of tradeable SRECs representing one megawatt-hour of solar energy generated by a facility connected to the electric distribution system. The value of an SREC was driven by the energy market. See N.J.S.A. 48:3-51.

On May 23, 2018, the Clean Energy Act (CEA), N.J.S.A. 48:3-87.9, was enacted. The CEA directed the BPU to close the SREC program to new

_____

[1] We simultaneously issue our opinions in two other matters affirming the Board's denial of requests to extend project completion deadlines for TI program projects: In re N.J. Solar Transition Pursuant to P.L. 2018, C. 17, Docket Nos. A-0686-23 and A-0689-23, and In re N.J. Solar Transition Pursuant to P.L. 2018, C. 17, Docket No. A-0675-23.

applications once the BPU determined 5.1% of the kilowatt-hours sold in the state was generated by solar electric power connected to the electric distribution system (the 5.1% Milestone). The CEA also directed the BPU to complete a study evaluating how to replace the SREC program once the 5.1% Milestone was reached to encourage the continued efficient and orderly development of solar renewable energy generating sources in the State. Ultimately, the study recommended enactment of the Successor Solar Incentive (SuSI) program.

A.    The TI Program.

On December 6, 2019, after the SREC program closed, the BPU established the TI program, N.J.A.C. 14:8-10.1 to -10.7, to provide developers of solar projects a bridge between the closed SREC program and the then-still-to-be-developed SuSI program. The TI program provided eligible projects with Transition Renewable Energy Certificates (TREC) for each megawatt-hour of electricity produced. The TREC incentives were specifically tailored for each project.

The TI program began accepting registrations on May 1, 2020. Pursuant to the TI program's regulations, a solar developer had one year from registration with the program to complete construction of the solar project and submit a post-construction certification package. N.J.A.C. 14:8-10.4(f)(4)(ii)(2). TI program

rules did not allow for an extension of a project completion deadline, also referred to as the project's expiration date. However, the BPU was authorized to waive its regulations for good cause. N.J.A.C. 14:1-1.2(b).

On July 29, 2020, the BPU issued an order granting a blanket extension of completion deadlines for projects registered in the TI program on or before October 30, 2020, and setting a new project completion deadline of October 30, 2021, for all affected projects. The BPU found the extension was warranted because the solar industry was adjusting to the COVID-19 pandemic and changes in the statewide solar incentive programs.

On June 24, 2021, the BPU issued an order providing a further six-month extension of project completion deadlines for all projects registered in the TI program as of that date. The BPU found the solar industry was still adjusting to the COVID-19 pandemic and the regulatory uncertainty caused by the anticipated launch of the SuSI program, which remained under development. The BPU determined extending existing TI program project completion deadlines would support the solar industry and protect ratepayers from potential market disruptions that would arise if TI program projects expired before completion and were abandoned.

On July 9, 2021, the Solar Act of 2021, N.J.S.A. 48:3-114 to -120, was enacted. The statute authorized the BPU to launch the SuSI program.

On July 28, 2021, the BPU announced the TI program would close on August 28, 2021, when the SuSI program would begin accepting solar project applications. The final day to submit a new application to the TI program was August 27, 2021.

On August 28, 2021, the Board launched the SuSI program, which had an administratively determined incentive (ADI) program, meant for relatively smaller solar generation projects, and a competitive incentive (CSI) program, intended for larger "grid supply" solar generation projects. N.J.S.A. 48:3-115 to -117; see also N.J.A.C. 14:8-11.4 (detailing eligibility criteria for different classes of projects in SuSI program); N.J.A.C. 14:8-11.5(d)(1) (describing required application information for ADI program).

On January 26, 2022, the BPU issued an order allowing solar projects registered in the TI program, where the solar developer was unlikely to complete the project by its project completion deadline, to migrate to the SuSI program. To facilitate this, the BPU waived certain technical requirements of the ADI program, such as the prohibition against including projects where construction had already commenced. See N.J.A.C. 14:8-11.4(b) (explaining the ADI

6

program would only be open to new projects that had not commenced commercial operation prior to the opening of the ADI program registration portal). The Board found facilitating the ability of projects registered in the TI program to enter the ADI program would benefit the solar industry and avoid stranding, without incentives, a then-increasing number of TI registrants that might be unable to complete projects within the relevant project completion deadlines.

B.    The Gibbstown Order.

On June 8, 2022, the BPU issued an order pursuant to N.J.A.C. 14:1-1.2(b) granting a conditional six-month extension of the project completion deadline for a TI program solar project in Gibbstown (the Gibbstown Order). That project was accepted into the TI program on June 15, 2020, and had an initial project completion deadline of June 15, 2021. After application of the two blanket extensions issued by the BPU, the project's completion deadline was extended to April 30, 2022.

In March 2022, the developer requested an extension of the project completion deadline to July 30, 2022. In April 2022, the developer amended the application, requesting an extension of the project completion deadline to December 31, 2022. In support of its application, the developer stated it

7

completed construction of the project, submitted a post-construction certification package, and documented the project was capable of fully energizing and connecting to the electricity grid. However, the developer alleged the local electric distribution company (EDC) had not completed offsite upgrades necessary to allow interconnection of the project to the electric distribution system at full capacity. As a result, the EDC granted permission to operate (PTO) the project only at partial capacity at the level that could be accommodated by the then-existing electric distribution system.

According to the application, the developer paid all invoices it received from the EDC for the necessary upgrades, the completion of which was entirely under the control of the EDC. The EDC initially advised the developer the offsite upgrades necessary to allow full capacity interconnection to the electric distribution system would be completed by April 2022, in time to meet the project completion deadline. The EDC later informed the developer the upgrades would not be completed until fall 2022. This potentially left a portion of the capacity of the project without access to solar energy incentives for failure to meet the project completion deadline.

In considering the extension application, the Board noted "[t]he general purpose of the TI [p]rogram [r]ules, as well as the timelines contained therein,

A-3818-22

is to provide a smooth transition to the [SuSI] [p]rogram and support to New Jersey's thriving solar market while safeguarding the interest of the State's ratepayers by doing so at the lowest possible cost." Quoting N.J.A.C. 14:1-1.2(b), the Board noted "[i]n special cases, upon a showing of good cause [it] may, unless otherwise specifically stated, relax or permit deviations from" its regulations. The Board acknowledged waiver of its regulations is appropriate where compelling "full compliance with the rule(s) would adversely affect the ratepayers of a utility . . . , [and] the ability of said utility . . . to continue to render safe, adequate and proper service, or in the interests of the general public." N.J.A.C. 14:1-1.2(b)(1). Applying this authority, the Board found if the Gibbstown developer could substantiate the claims made in its extension application, "the unforeseeable delay in the EDC's completion of its upgrades represents good cause to waive the deadline" and grant a six-month extension.

In addition, the Board found it was

> concerned that, under the unique circumstances occasioned by the end of the TI [p]rogram, solar developers that enter into interconnection agreements with the explicit understanding that the interconnection upgrades would be complete prior to a project's TI [p]rogram expiration not be penalized for delays in the EDC's construction of upgrades that were funded in good faith by the project developer.

9

Thus, the Board "ma[de] conditional extensions available to similarly situated parties on comparable terms" where:

> 1.    The project can demonstrate that it was electrically and mechanically complete prior to its TI [p]rogram expiration date, which the Board interprets as a project that could be energized, but for the lack of a necessary [PTO] from the EDC due to factors that are the sole responsibility of the EDC;
>
> 2.    The project can demonstrate that it had received and satisfied all necessary permits from all authorities having jurisdiction over the project prior to its TI [p]rogram expiration date, including required final inspections; and
>
> 3.    Project construction was proceeding based on a representation from the EDC that any necessary interconnection upgrades would be completed prior to the project's TI [p]rogram expiration date, that the upgrades were fully funded by the project developer, but that despite the developer's best efforts, the estimated upgrade completion date was unilaterally extended by the EDC.

The Board determined to be eligible for a six-month extension under these criteria, a developer must apply for the extension before the project's completion deadline, and submit specified documents.  In addition, the BPU ordered:

> In evaluating conditional waiver requests, the TI [p]rogram administrator should review the construction schedule presented by the EDC at the time or after the interconnection agreement was executed, to determine if the EDC's estimated construction schedule was consistent with the project's TI [p]rogram expiration

date.  So long as the developer timely provided any necessary deposits at the time billed by the EDC, met all other requirements imposed by the EDC, and the construction schedule was otherwise feasible within the constraints of the TI [p]rogram, then the Board believes that solar developers who reasonably relied on the EDC's schedule, and proceeded with the project, should be provided relief.

The Board directed the Gibbstown developer to submit the documents identified in the Gibbstown Order in support of its application.

C.    Ecological's Project.

On August 15, 2021, two weeks before the last day for new registrations, Ecological registered its net-metered, non-residential, rooftop solar project, referred to as Liberty Drug, in the TI program.  The BPU granted conditional acceptance of the project registration on August 15, 2021, resulting in a project completion deadline of August 15, 2022.

On August 12, 2022, three days before the project completion deadline, Ecological filed a petition with the BPU for a five-month extension of the deadline.[2]  Ecological alleged its project was complete and awaiting municipal inspection.  However, according to Ecological, "a veritable cascade" of supply

_____

[2]  Although Ecological's petition stated it was seeking a six-month extension, it also twice stated it sought an extension of the project completion deadline to January 15, 2023, five months after the August 15, 2022 deadline.

A-3818-22

chain issues beyond its control delayed completion of the project and the inspection could not be scheduled prior to September 1, 2022. In addition, Ecological alleged although it expected the EDC for the project to issue PTO after the inspection, it was impossible to predict when the utility would do so, given the large number of solar projects seeking PTO.

On November 9, 2022, the BPU issued an order denying Ecological's extension application. Applying the good cause standard set forth in N.J.A.C. 14:1-1.2(b), the Board found extension of the project completion deadline was not warranted. The Board adopted its staff's observation that Ecological registered the project in the closing weeks of the TI program, which required project completion in one year and did not provide for an extension of project completion deadlines. The Board noted the TI program was intended to apply to projects mature enough to receive PTO within one year. In addition, the BPU found supply chain issues were well known in the industry at the time Ecological registered its project in the TI program, which Ecological knew was transitional and would be closed by the time its project received PTO. Thus, the Board concluded Ecological should have known extension of its project completion deadline was unlikely. The Board also found Ecological should have anticipated

12

a delay in obtaining a municipal inspection when deciding whether to invest in a project with a one-year completion deadline.

The Board compared the allegations in Ecological's application to those before the Board when it issued the Gibbstown Order. The BPU found Ecological's project was not as mature as the Gibbstown project and "ongoing interconnection negotiation necessarily relates to project maturity," particularly in light of the one-year timeframe required by the TI program.

Finally, the Board found full compliance with the TI program's one-year project completion deadline would further the interests of the State and the public in maintaining an orderly transition from the legacy TI program to the SuSI program and in reducing the cost of achieving the State's solar energy goals. The Board encouraged Ecological to transfer the project to the ADI component of the SuSI program and waived the SuSI program's prohibition on accepting projects that had begun construction.

On December 1, 2022, Ecological moved for reconsideration of the November 9, 2022 order. Ecological argued the criteria established in the Gibbstown Order constituted rulemaking without compliance with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -31. See Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 330 (1984). Thus,

Ecological argued the Board could not require satisfaction of the criteria in the Gibbstown Order as a condition of granting an extension. In addition, Ecological argued the Gibbstown Order established a "new, extraordinarily high[,] and discriminatory standard for finding good cause" under N.J.A.C. 14:1-1.2 that effectively eliminated a case-by-case review of requests to extend a project completion deadline in the TI program. Ecological argued it invested in its project based on its understanding an extension of the project completion deadline could be obtained from the Board on a flexible showing of good cause under N.J.A.C. 14:1-1.2. According to Ecological, because the Board imposed rigid and unfair criteria for demonstrating good cause in the Gibbstown Order, its project was at risk of losing financial viability and being stranded. Ecological also argued the Board failed to turn square corners when considering its extension request. See F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985).[3]

On June 29, 2023, the BPU entered an order denying Ecological's motion for reconsideration. The Board found reconsideration of the November 9, 2022 order was not warranted, but considered Ecological's substantive arguments for

---

[3] NJ Solar joined Ecological's motion for reconsideration even though the November 9, 2022 order did not address NJ Solar's extension requests.

the sake of completeness. The Board rejected the argument the Gibbstown Order eliminated case-by-case consideration of whether, under N.J.A.C. 14:1-1.2, good cause existed to extend a TI program project completion deadline. The Board explained:

> The Gibbstown Order was an individual adjudication finding good cause to waive portions of the Board's TI rules pursuant to N.J.A.C. 14:1-1.2, based upon the very specific facts presented in that petition. Where the Board permitted applicants with the exact factual prerequisites to administratively apply for an extension, it did so on a non-discriminatory basis as a means of administrative efficiency with the understanding that it likely applied to only a very narrow subset of projects – those that were registered in TI, were electrically and mechanically complete, had secured all necessary permits, and were prevented from meeting the TI [p]rogram deadline only by a unilateral EDC change to the interconnection agreement, specifically the time in which the EDC interconnection upgrades would be completed following the developer's reliance on the original terms.

"In other words," the Board continued, "if a developer could demonstrate the underlying facts supporting the Board's decision to grant a conditional waiver to the Gibbstown project, then the Board also found good cause had been shown for that project."

The Board explained it considered Ecological's extension application under the good cause standard set forth in N.J.A.C. 14:1-1.2. The BPU found

15

the argument that the Gibbstown Order changed the good cause standard in N.J.A.C. 14:1-1.2 was based on a "flawed premise[.]" The Board also rejected Ecological's argument it routinely granted extensions of TI program project completion deadlines and Ecological reasonably assumed it would receive an extension of the deadline on lenient grounds. Ecological's appeal of the June 29, 2023 order followed.

D.   NJ Solar's Nine Projects.

On September 9, 2022, NJ Solar filed a petition with the BPU for a six-month extension of the completion deadlines for eight net-metered solar projects in the TI program. The projects had completion deadlines of September 9, 2022, the day the petition was filed. Regarding seven of the projects, located at the same site, NJ Solar alleged the projects were ninety percent complete, but finalization was delayed by a supply chain disruption.

According to NJ Solar, the eighth project, Molinelli Produce, was complete but the developer had been waiting since March 2022 for Atlantic City Electric Company (ACE), the EDC for the project, to complete work necessary to issue PTO. On September 29, 2022, ACE submitted a letter to the BPU stating NJ Solar's characterization of the delays at the Molinelli Produce project was "misleading." According to ACE, which did not take a position on whether the

16

extension should be granted, it was prepared to complete upgrades on July 14, 2022, but the business operator at the property requested the upgrades be rescheduled to minimize disruption of business operations. ACE and the business owner ultimately agreed the utility would complete the upgrades on August 22, 2022. A meter was installed on September 15, 2022, and PTO was issued on September 21, 2022.

NJ Solar alleged its ninth project, Landmark Liquors, with a completion deadline of September 15, 2022, was more than eighty percent complete, but it had been waiting since March 2022 for ACE to make a necessary transformer upgrade. NJ Solar attributed ACE's delay to supply chain issues.

On September 29, 2022, ACE submitted a letter to the BPU regarding NJ Solar's extension request. ACE did not take a position on whether the Board should grant an extension. However, ACE stated:

> NJ Solar['s] allegations concerning ACE are false or misinformed. [NJ Solar's] project cannot interconnect because it is not complete. ACE played no role in NJ Solar['s] inability to secure an inverter for this project, which is the stated cause for its request for an extension. ACE is ready and able to interconnect the project once it is complete and after [NJ Solar] submits the required application documents which it has yet to do.[4]

---

[4] It appears ACE did not send a copy of its letters to NJ Solar, which did not have an opportunity to respond before the Board issued its decision.

On September 18, 2023, the BPU issued an order denying NJ Solar's extension applications. As a general matter, the Board found the Gibbstown Order was not rulemaking, but an adjudication on the specific facts presented in the Gibbstown project extension application. The Board found the Gibbstown Order did not establish a broadly applicable policy determination, but was an application of N.J.A.C. 14:1-1.2(b) to the facts relating to the Gibbstown project and an attempt to lessen the regulatory burden on a small group of developers in similar circumstances. Thus, the Board concluded issuance of the Gibbstown Order was an exercise of its quasi-judicial, not quasi-legislative authority, and compliance with the APA was not necessary.

Applying N.J.A.C. 14:1-1.2(b) to NJ Solar's extension requests, the Board found NJ Solar did not establish good cause for relaxation of the project completion deadlines for its projects. The BPU found NJ Solar registered its project in the closing days of the TI program and knew or should have known the transition program was closing. In addition, the Board found NJ Solar was aware of the one-year deadline to complete the project and the TI program regulations did not provide for an extension of the project completion deadline. The Board noted it had consistently rejected extension requests based on known supply chain delays. The Board also found ACE's letters cast doubt on NJ

Solar's claims, for the projects for which ACE was the EDC, that NJ Solar's failure to complete the projects and obtain PTOs were attributable to unreasonable delays by ACE.

In reaching its decision, the Board balanced NJ Solar's interests as a solar developer that invested in its projects with the public's interest in timely completion of projects, the ratepayers' interest in controlling the cost of solar subsidies, and the State's interest in ensuring solar incentive levels appropriately reflect the time during which a project reaches commercial operation. The Board noted it addressed supply chain delays in its two prior orders granting extensions to all projects in the TI program. In addition, the Board determined "general interconnection processing delays" were insufficient to warrant an extension of a project completion deadline. The Board found the one-year project completion requirement in the TI program was an indication the program "was always intended to be limited to those projects mature enough to complete in twelve months." The Board further found NJ Solar's projects were in early phases when they registered in the TI program's final days and the delays they experienced were foreseeable. Finally, the Board determined denial of the extension applications furthered the interests of the State and the public in

19

maintaining an orderly transition from the legacy TI program to the SuSI program and in reducing the cost of achieving the State's solar energy goals.

The Board encouraged NJ Solar to register its projects in the ADI aspect of the SuSI program. To facilitate the transfer of the projects to the SuSI program, the Board waived N.J.A.C. 14:8-11.4(b), which prohibited admission of projects in SuSI where construction had commenced, for the programs addressed in the September 18, 2023 order. NJ Solar's appeal of the September 18, 2023 order followed.

We subsequently granted Ecological's and NJ Solar's motions to consolidate the appeals. In a joint brief, Ecological and NJ Solar argue: (1) issuance of the Gibbstown Order was rulemaking without compliance with the APA and was, therefore, a denial of due process and an invalid basis on which to deny their extension applications; (2) the BPU failed to turn square corners when it denied their extension requests; and (3) the Board's orders were arbitrary and capricious, and identified no rational basis on which to conclude delays attributable to supply chain issues were not good cause of an extension. The Director, Division of Rate Counsel filed a brief supporting the BPU's orders.[5]

---

[5] On July 16, 2024, we denied Ecological's and NJ Solar's joint motion for summary disposition. R. 2:8-3(b).

We begin with Ecological's and NJ Solar's arguments regarding the validity of the Gibbstown Order. "Administrative agencies enjoy great leeway when selecting among rulemaking procedures, contested hearings, or hybrid informal methods in order to fulfill their statutory mandates." In re Provision of Basic Generation Serv., 205 N.J. 339, 347 (2011). "If an agency determination or action constitutes an 'administrative rule,' then its validity requires compliance with the specific procedures of the APA that control the promulgation of rules." Airwork Serv. Div. v. Dir., Div. of Tax'n, 97 N.J. 290, 300 (1984) (citation omitted). The APA defines "administrative rule" or "rule" as "each agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." N.J.S.A. 52:14B-2.

In Metromedia, our Supreme Court provided standards for determining whether rulemaking requirements apply to an agency's decision. 97 N.J. at 331-34. The Court explained:

> [A]n agency determination must be considered an administrative rule . . . if it appears that the agency determination, in many or most of the following circumstances, (1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow

select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy. These relevant factors can, either singly or in combination, determine in a given case whether the essential agency action must be rendered through rule-making or adjudication.

[Id. at 331-32.]

"The pertinent evaluation focuses on the importance and weight of each factor, and is not based on a quantitative compilation of the number of factors which weigh for or against labeling the agency determination as a rule." Provision of Basic Generation Serv., 205 N.J. at 350.

We agree with the Board's conclusion the Gibbstown Order "was an individual adjudication finding good cause to waive portions of the Board's TI [program] rules pursuant to N.J.A.C. 14:1-1.2, based upon the very specific facts presented in that petition." The Gibbstown Order does not purport to establish a good cause standard under N.J.A.C. 14:1-1.2 for general applicability in future

22

cases. Instead, the Board decided there was good cause to extend the project completion deadline for the Gibbstown project based on the specific circumstances presented in the application for that project. The Gibbstown Order also does not establish a legal standard or directive not otherwise inferable from the statutes authorizing the Board to administer solar incentive programs. Nor does the order reflect administrative policy. It instead adjudicated a developer's application for an extension of a project completion deadline under the good cause standard in N.J.A.C. 14:1-1.2.

In the Gibbstown Order, the Board also found TI program developers, in circumstances similar to those experienced by the Gibbstown developer, would be entitled to an extension if they produced specified documents establishing three factors. That finding does not apply to a large segment of the regulated or general public, but rather to a narrow group of developers in a legacy incentive program facing particular circumstances similar to those experienced by the Gibbstown developer that may warrant relaxation of a BPU regulation.

More importantly, the Gibbstown Order does not, as Ecological and NJ Solar argue, define the only set of circumstances constituting good cause for an extension of a TI program project completion deadline under N.J.A.C. 14:1-1.2(b). As evidenced by the Board's analysis in the challenged orders, the Board

23

considered whether a variety of circumstances constituted good cause for an extension. Nothing in the orders suggests a developer's inability to establish the exact circumstances or criteria identified in the Gibbstown Order precluded a finding of good cause for an extension under different circumstances. On the contrary, the Board discussed at length delays resulting from a number of causes and determined for each set of circumstances whether good cause for an extension existed.

Turning to the validity of the Board's denial of Ecological's and NJ Solar's extension applications, the scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

24

[Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are, however, "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

During our review, we must remain mindful "[t]he Legislature has endowed the BPU with broad power to regulate public utilities . . . . [and] considerable discretion in exercising those powers." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384-85 (2001) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)). The Board's decisions are presumed valid "and will not be disturbed unless [the court] find[s] a lack of 'reasonable support in the evidence.'" Id. at 385 (quoting In re Jersey Cent. Power & Light Co., 85 N.J. 520, 527 (1981)). We may set aside a BPU order "when it clearly appears that there was no evidence before the [B]oard to support the same reasonably or that the same was without the jurisdiction of the [B]oard." N.J.S.A. 48:2-46.

Our review of the record reveals sufficient support for the Board's determinations neither Ecological nor NJ Solar established good cause for an extension of the completion deadlines for their projects. As noted above, the Board is authorized to relax its regulations "[i]n special cases and for good cause

shown . . . ." N.J.A.C. 14:1-1.2(b). The party seeking relaxation of a regulation bears the burden of establishing good cause. N.J.A.C. 14:1-1.2(b)(2).

The record supports the Board's finding Ecological and NJ Solar registered their early-stage projects in the last days of the TI program. They were aware their projects would be completed a year after the termination of the legacy program, with the successor SuSI program long in place. The Board reasonably determined Ecological and NJ Solar knew or should have known extensions of their projects' completion deadlines was not likely in those circumstances.

In addition, at the time the projects were registered in the TI program, supply chain and interconnection issues were well known to the industry. Ecological and NJ Solar made the calculated risk to invest in projects with a tight completion deadline in an uncertain environment. They produced no evidence the Board routinely granted extensions of project completion deadlines based on delays caused by supply chain issues. On this record, we cannot conclude the Board acted arbitrarily or capriciously when it determined Ecological and NJ Solar did not establish good cause for the requested extensions.

A-3818-22

Finally, we are not persuaded the BPU violated the square corners doctrine. The Supreme Court explained the scope of doctrine thusly:

> We have in a variety of contexts insisted that governmental officials act solely in the public interest. In dealing with the public, government must "turn square corners." Gruber v. Mayor & Twp. Com. of Raritan Twp., 73 N.J. Super. 120 (App. Div.), aff'd, 39 N.J. 1 (1962). This applies, for example, in government contracts. See Keyes Martin v. [Dir.,] Div. of Purchase and Property, 99 N.J. 244 (1985). Also, in the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. See Rockaway v. Donofrio, 186 N.J. Super. 344 (App. Div. 1982); State v. Siris, 191 N.J. Super. 261 ([Law Div.] 1983). It may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the property owner. Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forego the freedom of action that private citizens may employ in dealing with one another.
>
> [F.M.C. Stores, 100 N.J. at 426-27; accord W.V. Pangborne & Co. v. N.J. Dep't of Transp., 116 N.J. 543, 561-62 (1989)).]

"One of the hallmarks of the 'turn square corners' doctrine is that its application is not dependent upon a finding of bad faith." CBS Outdoor, Inc. v. Borough of Lebanon Plan. Bd., 414 N.J. Super. 563, 586-87 (App. Div. 2010). Equitable relief under the doctrine "cannot be exercised or withheld rigidly, but [is] always subject to the guiding principles of fundamental fairness." New

27

Concepts for Living, Inc. v. City of Hackensack, 376 N.J. Super. 394, 404 (App. Div. 2005).

Ecological and NJ Solar argue they relied on receiving the TI program incentives and a lenient application of the good cause standard in N.J.A.C. 14:1-1.2 with respect to extension of project completion deadlines when they decided to invest in their projects. They argue the BPU did not turn square corners when it established narrow criteria for obtaining an extension of a project completion deadline in the Gibbstown Order and when it failed to give sufficient weight to their capital investment when it denied their extension requests. As we explained above, we see no violation of the APA by the Board's issuance of the Gibbstown Order. The Order did not change the good cause standard in N.J.A.C. 14:1-1.2, but illustrated one example of good cause to extend a project completion deadline. In addition, Ecological and NJ Solar identify no representation by the BPU or its representatives that project completion deadlines would readily be extended if developers experienced delays caused by supply chain issues. On the contrary, the Board, after issuing two blanket extensions to account for supply chain issues, consistently rejected individual claims for further extensions based on delays attributable to the supply chain.

Finally, we have no cause to doubt Ecological and NJ Solar invested significant amounts of capital in their projects. However, they elected to register their projects in an incentive program that was on the precipice of termination and which had a strict one-year timeline for project completion. In their brief, Ecological and NJ Solar make various policy arguments that granting their extension requests would be financially sound and advance the State's clean energy goals. The Board, which has the statutory authority to administer the State's solar energy incentive programs, weighed those considerations when it decided Ecological and NJ Solar did not establish good cause for the extensions they requested. We see no basis on which to reverse the Board's decisions.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3818-22